GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY (134180)
MICHAEL GOLDBERG (188669)
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: 310/201-9150
Facsimile: 310/210-9160
-and-
SUSAN KUPFER (141724)
455 Market Street, Suite 1810
San Francisco, California 94105
Telephone: 415/972-8160
Facsimile: 415/972-8166

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS (190264)
MARC M. UMEDA (197847)
KELLY M. MCINTYRE (212360)
1010 Second Ave., Suite 2360
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

Co-Lead Counsel for Plaintiff

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ELIAV DAN, Derivatively On Behalf of BEA SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ALFRED S. CHUANG, CHARLES L. ILL, III, THOMAS M. ASHBURN, WILLIAM T. COLEMAN, III, DEAN O. MORTON, GEORGE REYES, CAROL A. BARTZ, STEWART K.P. GROSS, L. DALE CRANDALL, WILLIAM H. JANEWAY, ROBERT L. JOSS, WILLIAM M. KLEIN, <br><br> Defendants, <br> - and - <br><br> BEA SYSTEMS, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. C 04 2340 SI <br><br> VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT AND VIOLATIONS OF CALIFORNIA CORPORATIONS CODE <br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

1    Plaintiff, by his attorney, submits this Verified Amended Shareholder Derivative Complaint

2    (the "Complaint") against the defendants named herein.

3                              **NATURE OF THE ACTION**

4    1.    This is a shareholder derivative action brought by a shareholder of BEA Systems, Inc.

5    ("BEA" or the "Company"), on behalf of the Company against certain of its officers and directors

6    seeking to remedy defendants' violations of California law, including breaches of fiduciary duties,

7    abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations

8    of California Corporations Code that occurred between November 13, 2003 and the present (the

9    "Relevant Period") and that have caused substantial losses to BEA and other damages, such as to

10   its reputation and goodwill.

11                            **JURISDICTION AND VENUE**

12   2.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28

13   U.S.C. §1391(b), because the nominal defendant is located in this District and because many of the

14   acts alleged and complained of herein occurred in this District.

15   3.    This Court has jurisdiction over each defendant named herein  because each

16   defendant is either a corporation that conducts business in and maintains operations in this District,

17   or is an individual who has sufficient minimum contacts with California so as to render the exercise

18   of jurisdiction by the California courts permissible under traditional notions of fair play and

19   substantial justice. BEA is a Delaware corporation with its principal place of business located in San

20   Jose, California and many of the defendants are residents of California.

21   4.    Plaintiff brings this action on behalf of BEA pursuant to Rule 23.1 of the Federal

22   Rules of Civil Procedure based on principles of state law which prohibit breach of the federal

23   securities laws by officers and directors of public corporations, breach of the fiduciary duty of

24   corporate candor by corporate fiduciaries, and the misappropriation of corporate information which

25   was not available to the public investors.   This is not a collusive action designed to confer

26   jurisdiction on a court of the United States that it would not otherwise have.

27   5.    Venue is proper in this Court because one or more of the defendants either resides

28   in or maintains executive offices in this District, a substantial portion of the transactions and wrongs

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1  complained of herein, including the defendants' primary participation in the wrongful acts detailed

2  herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to BEA occurred

3  in this District, and defendants have received substantial compensation in this District by doing

4  business here and engaging in numerous activities that had an effect in this District.

5  **SUMMARY OF THE ACTION**

6      6.    BEA is a leading application infrastructure software company, providing products

7  and related services that help companies build distributed systems that extend investments in

8  existing computer systems and provide the foundation for running an integrated business. BEA's

9  products have applications in a variety of industries, including telecommunications, commercial and

10 investment banking, securities trading, government, manufacturing, retail, airlines, pharmaceuticals,

11 package delivery and insurance. The BEA WebLogic Enterprise Platform provides an application

12 infrastructure for building and deploying distributed, integrated information technology

13 environments, allowing customers to integrate private client/server networks, the Internet, intranets,

14 extranets, virtual private networks (VPNs), and mainframe and legacy systems as system

15 components. The Platform includes BEA WebLogic Server, BEA WebLogic Integration, BEA

16 WebLogic Portal, BEA Liquid Data for WebLogic and BEA WebLogic Workshop.

17     7.    BEA has a leading market share in the highly competitive and maturing, billion dollar

18 application server software market, with IBM and Oracle as its primary competitors. Application

19 server software provides a critical infrastructure layer that bridges the gap between business and

20 application software and network management software.

21     8.    During the Relevant Period, defendants issued materially false and misleading

22 statements to the investing public regarding BEA's business and prospects. Then on May 13, 2004,

23 BEA reported disappointing first quarter results, citing the difficult selling environment and sales

24 execution issues as the primary reasons. On this news, the Company's shares were rocked,

25 plummeting 30% to $8 per share.

26     9.    The true facts which were known to the defendants but actively concealed from the

27 public were as follows:

28

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

(a)      That the Company was experiencing material sales execution problems in its licensing division. This would result in license reserve being down in the comparable quarter and in the sequential quarter.  This clearly was apparent to defendants as they monitored the Company's North American sales territory on a weekly basis which was consistently well below quota;

(b)      That during the preceding quarter, the Company's sales staff and management were attempting to reorganize; however, in doing so, the Company's sales were actually disrupted. In fact, the head of North American Sales (Alan Fuge) resigned.  The Company's own sales staff did not even know what their territories or quotas were because the Company's executives failed to provide that to them in a timely manner.  Defendant Chuang admitted as much to third parties;

(c)      That the Company's WebLogic 8.1 Platform was far from "revolutionary" and was not selling as defendants claimed.  In fact, defendants knew that and admitted to third parties that the WebLogic 8.1 Platform was actually too new in the marketplace to experience strong growth.  Moreover, this would contribute to a year-to-year decline in license reserve – the first time in four quarters;

(d)      That the coverage of small and medium-sized businesses was transferred to the General Accounts Team – which disrupted the Company's North American reserves; and

(e)      The Company was experiencing weakness in its telecom vertical business – not strength.

10.      As a result of the defendants' false and misleading statements, BEA's stock price traded at inflated levels during the Relevant Period, increasing to as high as $14 in early 2004, whereby the Company's top officers and directors sold more than $26 million worth of their own shares during the Relevant Period.

11.      The defendants' actions of causing the Company's earnings and revenues to be falsely reported has cost the Company its credibility in the marketplace, market share, and millions of dollars paid in salaries, bonuses and stock options, which were performance-driven and paid due to the defendants' wrongful actions. Moreover, the defendants' misconduct has cost the Company thousands of dollars in investigating violations of federal securities laws in the numerous securities fraud class actions which have been filed against the Company.  These class action cases will cost

1   BEA millions of dollars to defend and even millions more to satisfy, and are directly related to the

2   defendants' breaches of fiduciary duties they each owe to the Company.

3                                    **THE PARTIES**

4       12.     Plaintiff Eliav Dan is, and was at times relevant hereto, an owner and holder of BEA

5   common stock.

6       13.     Nominal defendant BEA is a corporation organized and existing under the laws of

7   the state of Delaware with its headquarters located at 2315 North First Street, San Jose, California.

8   BEA is a provider of application infrastructure software and related services that help companies

9   build distributed systems that extend investments in existing computer systems and provide the

10  foundation for running an integrated business.  BEA's products have applications in a variety of

11  industries, including telecommunications, commercial and investment banking, securities trading,

12  government, manufacturing, retail, airlines, pharmaceuticals, package delivery and insurance.

13      14.     Defendant Alfred S. Chuang ("Chuang"), a co-founder of BEA, is, and at all times

14  relevant hereto was, Chairman of the Board, President, Chief Executive Officer ("CEO") and a

15  director of BEA.  Because of Chuang's positions, he knew the adverse non-public information about

16  the business of BEA, as well as its licensing division sales execution problems, sales disruption

17  caused by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform,

18  North American reserves disruption, telecom vertical business weakness, finances, markets and

19  present and future business prospects, via access to internal corporate documents, conversations and

20  connections with other corporate officers and employees, attendance at management and Board of

21  Directors' meetings and committees thereof and via reports and other information provided to him

22  in connection therewith.  During the Relevant Period, Chuang participated in the issuance of false

23  and/or misleading statements, including the preparation of the false and/or misleading press releases.

24  For FY:04, BEA paid defendant Chuang $827,175 in salary and bonus, and granted him 600,000

25  options to purchase BEA stock.  During the Relevant Period, Chuang sold 1,200,000 shares of BEA

26  stock for proceeds of $13,667,047.81.  He is not disinterested, is not independent, and cannot

27  appropriately respond to any shareholder demand.

28      15.     Defendant William M. Klein ("Klein") is, and at all times relevant hereto was,

1  Executive Vice President and Chief Financial Officer ("CFO") of BEA.  Because of Klein's

2  positions, he knew the adverse non-public information about the business of BEA, as well as its

3  licensing division sales execution problems, sales disruption caused by reorganization of sales staff

4  and management, weak sales of the WebLogic 8.1 Platform, North American reserves disruption,

5  telecom vertical business weakness, finances, markets and present and future business prospects,

6  via access to internal corporate documents, conversations and connections with other corporate

7  officers and employees, attendance at management meetings and committees thereof and via reports

8  and other information provided to him in connection therewith.  During the Relevant Period, Klein

9  participated in the issuance of false and/or misleading statements, including the preparation of the

10 false and/or misleading press releases.  For FY:04, BEA paid defendant Klein $491,044 in salary

11 and bonus and granted him 300,000 options to purchase BEA stock.  During the Relevant Period,

12 Klein sold 477,500 shares of BEA stock for proceeds of $6,394,028.83.  After his sales during the

13 Relevant Period, Klein owned a mere 2,370 BEA shares.  He has not sold any shares since February

14 2004.  During the 10 months prior to the start of the Relevant Period, Klein sold only 1,600 shares

15 for proceeds of $16,880.00.

16       16.    Defendant Charles L. Ill, III ("Ill") is, and at all times relevant hereto was, Executive

17 Vice President of Worldwide Sales of BEA.  Because of Ill's position, he knew the adverse

18 non-public information about the business of BEA, as well as its licensing division sales execution

19 problems, sales disruption caused by reorganization of sales staff and management, weak sales of

20 the WebLogic 8.1 Platform, North American reserves disruption, telecom vertical business

21 weakness, finances, markets and present and future business prospects, via access to internal

22 corporate documents, conversations and connections with other corporate officers and employees,

23 attendance at management meetings and via reports and other information provided to him in

24 connection therewith.  During the Relevant Period, Ill participated in the issuance of false and/or

25 misleading statements, including the preparation of the false and/or misleading press releases.  For

26 FY:04, BEA paid defendant Ill $857,341, in salary, bonus and other compensation, and granted him

27 100,000 options to purchase BEA stock.  On three consecutive days during the Relevant Period, Ill

28 sold a total of 100,000 shares of BEA stock for proceeds of $1,317,000.14.  During the 10 months

1    prior to the start of the Relevant Period, Ill did not sell any shares of BEA common stock.

2    Defendant Ill has not sold any shares during the last 10 months.

3          17.    Defendant Thomas M. Ashburn ("Ashburn") is, and at all times relevant hereto was,

4    Executive Vice President of Worldwide Services of BEA.  Because of Ashburn's position, he knew

5    the adverse non-public information about the business of BEA, as well as its licensing division sales

6    execution problems, sales disruption caused by reorganization of sales staff and management, weak

7    sales of the WebLogic 8.1 Platform, North American reserves disruption, telecom vertical business

8    weakness, finances, markets and present and future business prospects, via access to internal

9    corporate documents, conversations and connections with other corporate officers and employees,

10   attendance at management meetings and via reports and other information provided to him in

11   connection therewith.  During the Relevant Period, Ashburn participated in the issuance of false

12   and/or misleading statements, including the preparation of the false and/or misleading  press

13   releases.  For FY:04, BEA paid defendant Ashburn $469,493, in salary and bonus, and granted him

14   250,000 options to purchase BEA stock.  During the Relevant Period, Ashburn sold 100,000 shares

15   of BEA stock for proceeds of $1,335,000.  Defendant Ashburn has not sold any BEA stock during

16   the last 8 months.

17         18.    Defendant William T. Coleman, III ("Coleman") was a director of BEA until his

18   resignation on June 28, 2004.  Because of Coleman's position, he knew the adverse non-public

19   information about the business of BEA, as well as its licensing division sales execution problems,

20   sales disruption caused by reorganization of sales staff and management, weak sales of the

21   WebLogic 8.1 Platform, North American reserves disruption, telecom vertical business weakness,

22   finances, markets and present and future business prospects, via access to internal corporate

23   documents, conversations and connections with other corporate officers and employees, attendance

24   at Board of Directors' meetings and committees thereof and via reports and other information

25   provided to him in connection therewith.  During the Relevant Period, Coleman participated in the

26   issuance of false and/or misleading statements, including the preparation of the false and/or

27   misleading press releases.  For FY:04, BEA paid defendant Coleman $639,859, in salary and bonus.

28   During the Relevant Period, Coleman sold 300,000 shares of BEA stock for proceeds of $4,050,000.

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1    19.    Defendant Dean O. Morton ("Morton") is, and at all times relevant hereto was, a

2    director of BEA and a member of the Audit Committee and the Nominating and Governance

3    Committee.  Because of Morton's position, he knew the adverse non-public information about the

4    business of BEA, as well as its licensing division sales execution problems, sales disruption caused

5    by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform, North

6    American reserves disruption, telecom vertical business weakness, finances, markets and present

7    and future business prospects, via access to internal corporate documents, conversations and

8    connections with other corporate officers and employees, attendance at Board of Directors' meetings

9    and committees thereof and via reports and other information provided to him in connection

10   therewith.  During the Relevant Period, Morton participated in the issuance of false and/or

11   misleading statements, including the preparation of the false and/or misleading press releases.  He

12   is not disinterested, is not independent, and cannot appropriately respond to any shareholder

13   demand.

14   20.    Defendant George Reyes ("Reyes") is, and at all times relevant hereto was, a director

15   of BEA and a member of the Compensation Committee and the Nominating and Governance

16   Committee.  Because of Reyes' position, he knew the adverse non-public information about the

17   business of BEA, as well as its licensing division sales execution problems, sales disruption caused

18   by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform, North

19   American reserves disruption, telecom vertical business weakness, finances, markets and present

20   and future business prospects, via access to internal corporate documents, conversations and

21   connections with other corporate officers and employees, attendance at Board of Directors' meetings

22   and committees thereof and via reports and other information provided to him in connection

23   therewith.  During the Relevant Period, Reyes participated in the issuance of false and/or misleading

24   statements, including the preparation of the false and/or misleading press releases. He is not

25   disinterested, is not independent, and cannot appropriately respond to any shareholder demand.

26   21.    Defendant Carol A. Bartz ("Bartz") is, and at all times relevant hereto was, a director

27   of BEA and a member of the Compensation Committee and the Nominating and Governance

28   Committee.  Because of Bartz's position, she knew the adverse non-public information about the

1   business of BEA, as well as its licensing division sales execution problems, sales disruption caused

2   by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform, North

3   American reserves disruption, telecom vertical business weakness,  finances, markets and present

4   and future business prospects, via access to internal corporate documents, conversations and

5   connections with other corporate officers and employees, attendance at Board of Directors' meetings

6   and committees thereof and via reports and other information provided to her in connection

7   therewith.  During the Relevant Period, Bartz participated in the issuance of false and/or misleading

8   statements, including the preparation of the false and/or misleading press releases. She is not

9   disinterested, is not independent, and cannot appropriately respond to any shareholder demand.

10      22.    Defendant Stewart K.P. Gross ("Gross") is, and at all times relevant hereto was, a

11   director of BEA and a member of the Audit Committee and the Nominating and Governance

12   Committee.  Because of Gross' position, he knew the adverse non-public information about the

13   business of BEA, as well as its licensing division sales execution problems, sales disruption caused

14   by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform, North

15   American reserves disruption, telecom vertical business weakness, finances, markets and present

16   and future business prospects, via access to internal corporate documents, conversations and

17   connections with other corporate officers and employees, attendance at Board of Directors' meetings

18   and committees thereof and via reports and other information provided to him in connection

19   therewith.  During the Relevant Period, Gross participated in the issuance of false and/or misleading

20   statements, including the preparation of the false and/or misleading press releases. He is not

21   disinterested, is not independent, and cannot appropriately respond to any shareholder demand.

22      23.    Defendant L. Dale Crandall ("Crandall") is, and at all times relevant hereto was, a

23   director of BEA and a member of the Audit Committee and the Nominating and Governance

24   Committee.  Because of Crandall's position, he knew the adverse non-public information about the

25   business of BEA, as well as its licensing division sales execution problems, sales disruption caused

26   by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform, North

27   American reserves disruption, telecom vertical business weakness, finances, markets and present

28   and future business prospects, via access to internal corporate documents, conversations and

1  connections with other corporate officers and employees, attendance at Board of Directors' meetings

2  and committees thereof and via reports and other information provided to him in connection

3  therewith.  During the Relevant Period, Crandall participated in the issuance of false and/or

4  misleading statements, including the preparation of the false and/or misleading press releases. He

5  is not disinterested, is not independent, and cannot appropriately respond to any shareholder

6  demand.

7       24.    Defendant William H. Janeway ("Janeway") is, and at all times relevant hereto was,

8  a director of BEA and a member of the Compensation Committee and Nominating and Governance

9  Committee.  Because of Janeway's position, he knew the adverse non-public information about the

10  business of BEA, as well as its licensing division sales execution problems, sales disruption caused

11  by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform, North

12  American reserves disruption, telecom vertical business weakness, finances, markets and present

13  and future business prospects, via access to internal corporate documents, conversations and

14  connections with other corporate officers and employees, attendance at Board of Directors' meetings

15  and committees thereof and via reports and other information provided to him in connection

16  therewith.  During the Relevant Period, Janeway participated in the issuance of false and/or

17  misleading statements, including the preparation of the false and/or misleading  press releases. He

18  is not disinterested, is not independent, and cannot appropriately respond to any shareholder

19  demand.

20       25.    Defendant Robert L. Joss ("Joss") was a director of BEA and a member of the Audit

21  Committee and the Nominating and Governance Committee at all times relevant hereto until April

22  2004. Because of Joss' position, he knew the adverse non-public information about the business of

23  BEA, as well as its licensing division sales execution problems, sales disruption caused by

24  reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform, North

25  American reserves disruption, telecom vertical business weakness, finances, markets and present

26  and future business prospects, via access to internal corporate documents, conversations and

27  connections with other corporate officers and employees, attendance at Board of Directors' meetings

28  and committees thereof and via reports and other information provided to him in connection

therewith.  During the Relevant Period, Joss participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

26.     The defendants identified in ¶¶14, 18-25 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶14-17 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶14-18 are referred to herein as the "Insider Selling Defendants."  Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

27.     In addition to the above-described involvement, each Individual Defendant had knowledge of BEA's problems and was motivated to conceal such problems.  Many of the internal reports showing BEA's forecasted and actual growth were prepared by the finance department with the assistance of Klein, Ill and Ashburn.  Each Individual Defendant sought to demonstrate that he or she could lead the Company successfully and generate the growth expected by the market.

28.     Defendants were motivated to engage in the fraudulent practices alleged herein in order to reap millions of dollars in insider trading proceeds.

29.     The Director Defendants, because of their positions with the Company, possessed the power and authority to control the contents of BEA's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.* the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them but not the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading.  The Director Defendants are liable for the false statements pleaded herein at paragraphs 49, 51, 59 and 72.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

30.     By reason of their positions as officers, directors and/or fiduciaries of BEA and because of their ability to control the business and corporate affairs of BEA, the Individual

Defendants owed BEA and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage BEA in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of BEA and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

31.     Each director and officer of the Company owes to BEA and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of BEA, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with BEA, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of BEA.

33.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of BEA, and was at all times acting within the course and scope of such agency.

34.     To discharge their duties, the officers and directors of BEA were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of BEA were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements,

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1  including acting only within the scope of its legal authority and disseminating truthful and accurate

2  statements to the SEC and the investing public;

3          (c)     conduct the affairs of the Company in an efficient, business-like manner so

4  as to make it possible to provide the highest quality performance of its business, to avoid wasting

5  the Company's assets, and to maximize the value of the Company's stock;

6          (d)     properly and accurately guide investors and analysts as to the true financial

7  condition of the Company at any given time, including making accurate statements about the

8  Company's financial results and prospects, and ensuring that the Company maintained an adequate

9  system of financial controls such that the Company's financial reporting would be true and accurate

10 at all times;

11         (e)     remain informed as to how BEA conducted its operations, and, upon receipt

12 of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry

13 in connection therewith, and to take steps to correct such conditions or practices and make such

14 disclosures as necessary to comply with federal and state securities laws; and

15         (f)     ensure that the Company was operated in a diligent, honest and prudent

16 manner in compliance with all applicable federal, state and local laws, rules and regulations.

17     35.     Each Individual Defendant, by virtue of his or her position as a director and/or

18 officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and

19 the exercise of due care and diligence in the management and administration of the affairs of the

20 Company, as well as in the use and preservation of its property and assets.  The conduct of the

21 Individual Defendants complained of herein involves a knowing and culpable violation of their

22 obligations as directors and officers of BEA, the absence of good faith on their part, and a reckless

23 disregard for their duties to the Company and its shareholders that the Individual Defendants were

24 aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the

25 Individual Defendants who were also officers and/or directors of the Company during the Relevant

26 Period has been ratified by the remaining Individual Defendants who collectively comprised all of

27 BEA's Board during the Relevant Period.

28     36.     The Individual Defendants breached their duties of loyalty and good faith by

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1    allowing defendants to cause or by themselves causing the Company to misrepresent its financial

2    results, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such

3    illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct during

4    the Relevant Period, the Company is now the subject of several class action law suits that allege

5    violations of federal securities laws.  As a result, BEA has expended and will continue to expend

6    significant sums of money.  Such expenditures include, but are not limited to:

7            (a)     Costs incurred to carry out internal investigations, including legal fees paid

8    to outside counsel; and

9            (b)     Costs incurred in investigating and defending BEA and certain officers in the

10   class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

11           37.     Moreover, these actions have irreparably damaged BEA's corporate image and

12   goodwill.  For at least the foreseeable future, BEA will suffer from what is known as the "liar's

13   discount," a term applied to the stocks of companies who have been implicated in illegal behavior

14   and have misled the investing public, such that BEA's ability to raise equity capital or debt on

15   favorable terms in the future is now impaired.

16                   **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

17           38.     In committing the wrongful acts alleged herein, the Individual Defendants have

18   pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and

19   conspired with one another in furtherance of their common plan or design.  In addition to the

20   wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further

21   aided and abetted and/or assisted each other in breach of their respective duties.

22           39.     During all times relevant hereto, the Individual Defendants collectively and

23   individually initiated a course of conduct that was designed to and did: (I) conceal the fact that the

24   Company was improperly misrepresenting its financial results, in order to allow defendants to

25   artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants'

26   executive and directorial positions at BEA and the profits, power and prestige that the Individual

27   Defendants enjoyed as a result of these positions; and  (iii) deceive the investing public, including

28   shareholders of BEA, regarding the Individual Defendants' management of BEA's operations, the

1   Company's financial health and stability, specifically related to the Company's prospects that had
2   been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan,
3   conspiracy and course of conduct, the Individual Defendants collectively and individually took the
4   actions set forth herein.

5        40.    The Individual Defendants engaged in a conspiracy, common enterprise and/or
6   common course of conduct commencing by at least November 2003 and continuing thereafter.
7   During this time the Individual Defendants caused the Company to conceal the true fact that BEA
8   was misrepresenting its financial results.  In addition, defendants also made other specific, improper
9   statements about BEA's financial performance and future business prospects, as alleged herein.

10       41.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise,
11  and/or common course of conduct was, among other things, to disguise the Individual Defendants'
12  violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of
13  corporate assets and unjust enrichment**;** to conceal adverse information concerning the Company's
14  operations, financial condition and future business prospects; and to artificially inflate the price of
15  BEA common stock so they could: (i) dispose of over $26 million of their personally held stock; and
16  (ii) protect and enhance their executive and directorial positions and the substantial compensation
17  and prestige they obtained as a result thereof.

18       42.    The Individual Defendants accomplished their conspiracy, common enterprise and/or
19  common course of conduct by causing the Company to purposefully, recklessly or negligently
20  misrepresent its financial results.  Because the actions described herein occurred under the authority
21  of the Board of Directors, each of the Individual Defendants was a direct, necessary and substantial
22  participant in the conspiracy, common enterprise and/or common course of conduct complained of
23  herein.

24       43.    Each of the Individual Defendants aided and abetted and rendered substantial
25  assistance in the wrongs complained of herein.  In taking such actions to substantially assist the
26  commission of the wrongdoing complained of herein, each Individual Defendant acted with
27  knowledge of the primary wrongdoing, substantially assisted the accomplishment of that
28  wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

**BACKGROUND**

44.     Amid increasingly fierce competition from IBM and Oracle in BEA's maturing application server market, in November 2001, BEA embarked on a "bet the farm" new product strategy directed at expanding its core product, WebLogic, into a platform that also includes integration, development tools and portals to provide integration to enterprise applications.  The new product, ultimately called "WebLogic Platform 8.1," shipped in July 2003, after a 20-month research and development ("R&D") effort.  During that R&D effort, BEA increased its R&D expenditures by 45%.  This commitment came at a time when other information technology companies were scaling back in the face of overall weak customer demand following the September 11, 2001 terrorist attacks.

45.     BEA's fiscal years run from February 1 though January 31.  Hence, the 2004 fiscal year began on February 1, 2003 and ended on January 31, 2004.  Likewise, the 2005 fiscal year began on February 1, 2004 and ends on January 31, 2005.

46.     BEA reported disappointing first quarter results on May 13, 2004, citing the difficult selling environment and sales execution issues as the primary reasons.  However, these explanations were only half truths and even these were well known to defendants long before they were revealed.  Moreover, the Company's second quarter guidance of pro forma EPS "similar to Q1," or $0.08 on revenue of $265-$275 million, was below the consensus numbers of $0.09 and $276 million, respectively.

47.     Management partially blamed the miss on sales execution issues having to do with structural changes to the sales organization, which defendants claimed were enacted to better leverage the inside sales organization and VAR channel.  Management stated that these changes temporarily disrupted the sales coverage of many current and prospective accounts, but these changes were taking place as defendants were selling their own shares.  In addition, management claimed that suddenly it was taking longer than anticipated for clients to transition to its WebLogic 8.1 Platform, which has been out since last July.  BEA had claimed that 8.1 would significantly broaden its addressable market, a claim which was far from realistic.  In addition, the Company's open source application server, JBoss, stalled at the beginning of the Relevant Period, yet defendants

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1   sought to conceal that as well until they could unload millions worth of their shares.

2       48.    Prior to the start of the Relevant Period, defendants assured the marketplace that

3   BEA's sales strategy was in place, and that the sales force was ready and able to successfully sell

4   8.1.  In this regard, at an earnings conference call held on August 14, 2003, defendant Chuang

5   claimed "we have prepared the sales force and prim[ed] the market."

6                                     **IMPROPER STATEMENTS**

7       49.    On November 13, 2003, the Individual Defendants caused BEA to issue a press

8   release entitled "BEA Reports Third Quarter Financial Results; Net Income up 17% Year over Year;

9   BEA Developer Count up 55% Since Introduction of WebLogic Workshop."  The press release

10  stated in part:

> BEA Systems, Inc., the world's leading application infrastructure software company, today announced results of its fiscal third quarter.  For the third quarter ended October 31, 2003, BEA reported **total revenues of $252.1 million, up 8%** from $234.0 million in last year's third quarter.  For the third quarter, BEA reported **license revenues of $128.2 million, up 2%** from $126.1 million a year ago.  In the quarter, BEA generated **cash flow from operations of $60.0 million, up from $45.3 million a year ago**.  As of October 31, 2003, BEA's balance of cash and short-term investments was approximately $1.4 billion.
>
> For the third quarter, on a generally accepted accounting principles ("GAAP") basis, BEA reported operating income of $44.9 million, a 34% increase over last year's third quarter.  BEA reported GAAP operating margin of 17.8%, up from 14.3% in last year's third quarter.  BEA reported GAAP net income of $29.0 million, up 17% from $24.7 million a year ago.  BEA reported GAAP diluted net income per share of $0.07 for the third quarter, up from $0.06 last year.  Adoption of FASB Interpretation Number 46, "Consolidation of Variable Interest Entities," (FIN 46) had a $2.2 million positive impact on GAAP operating income, but no impact on net income.
>
> For the third quarter, BEA reported pro forma operating income of $51.7 million, a 28% increase over last year's third quarter.  BEA reported pro forma operating margin of 20.5%, after including the effect of adoption of FIN 46, up from 17.3% in last year's third quarter.  BEA reported pro forma net income of $34.1 million and pro forma diluted net income per share of $0.08 for the third quarter.  Pro forma results exclude acquisition-related expenses, net gains or losses on investments in equity securities, employer payroll taxes on stock options, write-offs of debt issuance costs and other non-recurring charges.  A reconciliation of pro forma adjustments is summarized on pages five and six of this release.  For full details on BEA's reported results, see the financial tables accompanying this release.
>
> **"With revenue, profit and cash flow all up, our first full quarter shipping BEA WebLogic Platform 8.1 was another solid performance, despite continuing challenges in the IT spending environment.  Compared to last year's third quarter, our platform business continued to grow and we improved our operating income, operating margin, and cash flow from operations," said Alfred Chuang, BEA's**

*founder, chairman and CEO.   "BEA WebLogic Platform 8.1 is gaining momentum.   It represents our most significant product transition since we introduced WebLogic application server five years ago.  We believe interest from customers and partners is growing, and we expect it to be a similar hit, too. Already our leading indicators, such as the increase in our developer base and our consulting and education business, show that customers are recognizing the promise of 8.1.  It's easy to see why.  Independent research studies and customer tests show that WebLogic 8.1 delivers revolutionary productivity gains that translate into faster time to value on mission-critical software projects like business integration and enterprise portals*."

50.     Plaintiff is not alleging that these statements were historically inaccurate, but rather, that when they are combined with the statements which accompanied that financial results in the press release and in the conference call, as described below, the historical figures were not indicative of what future results could be expected and therefore the Individual Defendants breached their fiduciary duties as these results should not have been expected in the future.

51.     In the November 13, 2003 press release, defendant Chuang commented:

"BEA WebLogic Platform 8.1 is gaining momentum. It represents our most significant product transition since we introduced WebLogic application server five years ago.  *We believe interest from customers and partners is growing, and we expect it to be a similar hit, too*...."

52.     In the Company's earnings conference call with analysts on 3Q:04 results, conducted on November 13, 2003, defendant Chuang commented on the acceptance of 8.1 as follows:

The transition to WebLogic 8.1 is the largest we have seen since we introduced WebLogic Server in 1998.  *And the early returns are encouraging that the 8.1 platform is going to be a hit too*.  We are also seeing improving results in services, with consulting, education, and customer support all showing growth around 8.1.  *Based on our experience with the transition to WebLogic Server, we believe these are leading indicators of future license revenues*.

53.     During the November 13, 2003 conference call with analysts, defendant Chuang was questioned by analysts as to the readiness of the sales force in marketing the new 8.1:

TIM KLASELL, ANALYST, THOMAS WEISEL: First question is on the sales force.  How effective is your existing sales force at closing 8.1 deals? Do [sic] think you are going to have to do more training, or do you think you're going to have to do change outs of your sales force? And as part of that, can you give me the current headcount there?

ALFRED CHUANG: We are in the low 500 direct quota bearing reps, which is the same that we had last quarter, We're beginning to add to our sales headcount in specific geographies this quarter.  *And we have done a very, very thorough job in training our sales force on 8.1.  Specifically, we have been training them to sell the platform, and also going far more into the value sale for a while*.

- 17 -

The sales force, I think, undeniably loves the platform sales message, because it is clear that nobody has what we have.  So it makes their sales cycle and the sales process much easier....

Our sales force today has changed a lot over the last two years.  Our sales force today has to sell a lot of business value.  Our typical contact - my typical contacts are CEOs of companies.  ***But we are talking a lot more about how infrastructure can enable business very differently.  And I think it is working***.

54.     However, defendants' statements highlighted above in paragraphs 51 through 53 above were materially false and misleading when made as the Individual Defendants were already aware that licensing revenues - a key indicator of new customer growth - was being internally identified as a problem facing the Company.  Furthermore, the Individual Defendants were advised by key personnel that in contrast to their public statements: (i) 8.1 was not "gaining momentum"; (ii) 8.1 was not experiencing wide customer acceptance; and (iii) the sales force was having tremendous difficulty closing deals on 8.1.

55.     It has been alleged in this regard, that the falsity of these statements was confirmed by former employees of BEA.  According to a former Vice President of Sales employed by BEA from December 2000 through May 2004, the WebLogic 8.1 product was too advanced and therefore, "beyond" what customers were looking for.  In addition, because 8.1 was a "proprietary solution," and therefore, a major purchase that could affect their entire systems, customers were taking significantly longer to reach final buy decisions and particularly so, with many of the larger accounts.   In reaction to these negative trends, it has been alleged that defendant Chuang consistently blamed the sales force for the longer selling cycle, when, in fact, it was a product problem.  It has further been alleged that because the main customers of WebLogic 8.1 were Fortune 500 companies and other big customers, large transaction opportunities were drying up and it was obvious to everyone involved that licensing revenue was declining.

56.     Similarly, it has been alleged that a former senior manager of public relations employed by BEA from January 2000 through October 2003 reported that licensing revenue had been going down for over a year before that person left the Company.  In fact, the decline of licensing revenue was a specific topic of conversation during at least three regular quarterly meetings headed by defendants Chuang and Klein, before the Relevant Period began.  Consequently,

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

at the time the statements set forth above in paragraphs 51 through 53 were made, the Individual

Defendants knew that any potential pools of new customers were drying up.

57.    On December 9, 2003, BEA conducted its Analyst Day during which defendant Klein

informed analysts that the Company was still targeting revenue of $260 million to $270 million in

the fourth quarter.  According to attendee analyst Think Equity Partners, as reported on December

10, 2003, BEA management "also commented that it currently had enough deals in the pipeline to

meet the guidance for the current quarter and believe that sales execution is improving."  Further,

Think Equity Partners reported that "management believes that it can maintain current license

revenue mix of about 51-53% of total revenue..."

58.    Defendants' statements to analysts at the Company's Analyst Day as reported above,

were materially false and misleading, as by this time, the Individual Defendants were well aware that

falling license revenue was a significant problem facing BEA, and the license revenue projections

made were undeliverable.

59.    On February 19, 2004, the Individual Defendants caused BEA to issue a press release

entitled "BEA Reports Fourth Quarter and Fiscal Year Financial Results; Annual Revenue Tops $1

Billion and Q4 License Revenue Grows 12% over Q3; Annual Net Income Increases 41% over FY

03, as BEA Reports Record Year and Quarter."  The press release stated in part:

> BEA Systems, Inc., the world's leading application infrastructure software company,
> today announced results of its fiscal fourth quarter and fiscal year.  For the fourth
> quarter ended January 31, 2004, BEA reported total revenues of $278.1 million, up
> 10% from $252.1 million in the third quarter ended October 31, 2003.  For the fourth
> quarter, BEA reported license revenues of $143.1 million, up 12% from $128.2
> million in the third quarter.  In the fourth quarter, BEA generated cash flow from
> operations of $63.8 million, and BEA's balance of cash and short-term investments
> was $1,469 million as of January 31, 2004.
>
> For the fourth quarter, on a generally accepted accounting principles
> ("GAAP") basis, BEA reported operating income of $58.8 million, a 31% increase
> over the third quarter.  BEA reported GAAP net income of $39.3 million, up 35%
> from $29.0 million in the third quarter.  BEA reported GAAP diluted net income per
> share of $0.09 for the fourth quarter, up from $0.07 the third quarter.
>
> For the fourth quarter, BEA reported pro forma operating income of $64.2
> million, a 24% increase over the third quarter.  BEA reported pro forma operating
> margin of 23.1%, up from 20.5% in the third quarter.  BEA reported pro forma net
> income of $42.8 million and pro forma diluted net income per share of $0.10 for the
> fourth quarter.  Pro forma results exclude acquisition-related expenses, net gains or
> losses on investments in equity securities, employer payroll taxes on stock options,

write-offs of debt issuance costs, and other non-recurring charges. A reconciliation of pro forma adjustments is summarized on pages five and six of this release. For full details on BEA's reported results, see the financial tables accompanying this release.

For the fiscal year ended January 31, 2004, BEA reported total revenues of $1,012.5 million, an 8% increase over the fiscal year ended January 31, 2003. For fiscal 2004, BEA reported GAAP operating income of $174.7 million, a 31% increase over fiscal 2003. For fiscal 2004, BEA had GAAP net income of $118.7 million, a 41% increase over fiscal 2003. For fiscal 2004, BEA had diluted net income per share of $0.28, compared to $0.20 in fiscal 2003. BEA generated fiscal 2004 cash flow from operations of $212.4 million.

"We are pleased to reach $1 billion in revenue for a fiscal year, and to return to double digit revenue growth. ***The R&D investment we made in WebLogic Platform 8.1 is paying off. We enter Q1 with good momentum, and we intend to focus on further expansion of our sales capacity and distribution channel,*** " said Alfred Chuang, BEA's founder, chairman and CEO. ***"BEA WebLogic Platform 8.1 continues to gain momentum.*** Independent research studies and customer tests show that WebLogic 8.1 can deliver revolutionary productivity gains that translate into faster time to value on mission-critical software projects like business integration and enterprise portals. Customers are seeing those gains come to life as they work through their initial deployments, and are seeing significant reuse benefits in their follow-on projects. Our approach of converging application development and integration, and simplifying application infrastructure, gives customers a more effective way to build, integrate and deploy enterprise applications and Web service. Customers are achieving increased productivity and return on investment. We believe the platform approach will help revolutionize enterprise IT projects."

60.     At the time the February 19th press release was issued, the Individual Defendants each knew that BEA and Chuang had made false and misleading statements in the press release and during the earnings conference call with analysts, including that: (i) "WebLogic Platform 8.1 is paying off"; (ii) the Company was entering "Q1 with good momentum"; (iii) the Company intended "to focus on further expansion of [its] sales capacity and distribution channel"; and (iv) "BEA WebLogic continues to gain momentum."

61.     It has been alleged, that senior management of BEA knew that WebLogic Platform 8.1 sales were already lagging by this time because this material adverse non-public information was the central focus of a forecast the former Vice President ("VP") had personally prepared and presented to them on February 1, 2004. The forecast showed that sales were "significantly short of plan." The former VP indicated that it was not unusual to forecast somewhat short at the beginning of a quarter, however, he had made it clear to management that this was a very significant shortage. In fact, defendant Chuang was so concerned about the significant shortage in 8.1 sales, that he began

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1  blaming the shortfall on the sales force.

2        62.    During BEA's 4Q:04 Earnings Conference Call, held on February 19, 2004, defendant

3  Chuang stated that "I think we've seen better than we expected momentum so far.  8.1 is very hot

4  ... [r]ight now, it all looks good."

5        63.    This statement, which specifically references purported success with the Company's

6  most critical product, thereby rendering it material, was false and misleading when made in light of

7  the non-public information of which defendant Chuang was personally aware of, having attended

8  the sales forecast meeting on February 1, 2004, as set forth above in paragraph 61 above.

9        64.    Moreover, the Company, through defendant Klein, and in the presence of defendant

10  Chuang, continued to specifically mislead the investing public regarding the Company's falling

11  licensing revenues as exhibited by the following exchange which took place on the conference call:

12        JASON MAYNARD [Merrill Lynch]: And Bill, just one question for you on
the deferred revenue line. The $42 million increase -- was there any increase of that

13  that was maybe related to the deferred license revenue, or a piece of that in there, or
was that all maintenance?

14

      BILL KLEIN: Most of it was maintenance. We did have some increases in

15  other areas, but the lion's share of that was the maintenance.

16        * * *

17        SARAH FRIAR [Goldman Sachs]: Got it. And then just very briefly on
guidance, which is terrific overall, 260 to 270 -- if I look at the license revenue

18  guidance, it actually looks at the midpoint that you're saying license as a percentage
of total revenue will come down a little bit, to more like around 49 percent. I think

19  it's been running at 50 percent plus. Why do you feel that kind of a little bit more
reticence on the license revenue side?

20

      BILL KLEIN: Well, it has to do more with Q1 seasonality. I think if you look

21  back at Q1 in any of our fiscal years, you will see that that mix shift a little bit and
then, over the course of the year, the license mix tends to peak in Q4.

22        * * *

23

24        BOB STIMSON, ANALYST, BANC OF AMERICA SECURITIES: Good
afternoon, everybody. Great quarter. Just a little bit of follow-up. Maybe, Bill, you
can help me with -- year over year, I think the deferred revenue last year was up

25  about 20 percent. Year over year this year, it's about 17 percent. Should the revenues
that you're seeing in the guidance, as we head into fiscal year '05 -- should that

26  basically be about the same percentage coming off the balance sheet that we saw last
year?

27

      BILL KLEIN: Looking out to the end of fiscal '05?

28

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1    BOB STIMSON: Yes.

2    BILL KLEIN: That would be a reasonable estimate, I think. We don't provide
     specific guidance on that, but that would not be unreasonable to look at it that way.

3

4    65.    The statement contained in paragraph 64 above is materially false and misleading as

5    by this time, defendants Klein and Chuang were well aware that licensing revenues were down - due

     to a failed sales organization and slow customer transition to 8.1, and not "Q1 seasonality."

6

7    66.    In addition, during the same conference call, defendant Chuang directly misled

8    analysts concerning the state of the Company's sales force and distribution strategy:

9    [Alfred Chuang] And that brings me to our distribution strategy. *As I said
     a little bit earlier, we enter Q1 with good momentum.* We're pleased with the level
     of customer activities in Q4, and with what we see for QI. As we announced in
10   December, the primary focus of our direct distribution strategy is to add to our
     capacity. We're committed to adding 100 new quota-bearing sales reps. We're
11   actively recruiting, and expect hiring to continue over the course of the next couple
     quarters.

12                                    *   *   *

13
     SARAH FRIAR, ANALYST, GOLDMAN SACHS: Good quarter, guys. A
14   quick question, just first on the sales force. Obviously, at the analyst day, you took
     us through in great depth the sales force strategy. And, as you said, you have added
15   heads this quarter. Could you kind of maybe just give us a flavor of where you think
     you are in that? So of those 100 heads, how many do you feel you have in place
16   today? And then, as part of the guidance, are you assuming that those heads will be
     up to speed with quotas in Ql? Or is that going to take a while?

17
     ALFRED CHUANG: Yes. I think that there is, as we have talked about the
18   analyst kickoff. So those 100 heads will be hired over a three to four quarter kind of
     period. Q4 was not the greatest hiring quarter for us, for sales heads. We were just
19   flat to slightly up. It mostly had a lot to do with everyone is on the accelerator, so
     it's not the priorities typically for the sales force to be spending all its time hiring
20   sales force. *So they are focused, focused, heads down, in the closing of deals. And
     you saw what happened here; we had a lot of deals. So people were very busy just
21   trying to close business.*

22   So are we pushing them very hard? We expect that we're going to go up in
     sales headcount in Q1. There will be some ramp time. We do put people on draw
23   (ph); it depends on what type experience they have, and that kind of stuff. It looks
     like - right now we're one month into the quarter - we will be on track for hiring for
24   Q1.

25   SARAH FRIAR: And as you do that, you talked about a solution sell rather
     than a point product sell. Have you now got most of your sales force able to sell the
26   entire platform, or do you still have specialized sales forces for integration and so
     on?

27
     ALFRED CHUANG: So here was (ph) a very interesting thing. *I think the
28   transition from selling points onto (ph) the selling platform has been enormously*

*successful*.  You can find a sales rep out in the middle of China somewhere and ask the guy, what do you sell? And he'll say, well, I am selling BEA Platform.  But what I said - selling is one thing.  Taking an order from a customer on a point product - we have no problem with that, we do that all day long.  We will take orders for anything that they want to divide (ph). But the story and the selling methodology is around selling the whole platform itself, and our ultimate goal is for the customer to adopt the whole platform, whether we sell one product, two products or they decide to sell the whole platform itself.

***So that doesn't really matter to us that much.   Our sales force is well-trained***.  We just weeks ago, in going into our biggest sales training event ever, and we do expect to refresh them all with updates and the additions we have put on the platform itself. ***I think the momentum is great***.

* * *

DAVID RUDOW, ANALYST, PIPER JAFFRAY:  Nice job on the quarter. Any changes- major changes in sales force in North America, or do you expect to make any major changes there in Q1?

ALFRED CHUANG: ***We do not expect to make any changes to our sales force in the Americas in Q1.  We have added a thing in mid-course of quarter (ph) called the general territory***, which really is used for attacking the SME marketplace, accounts that we normally don't call on, the smaller deals, project starters and also focus on a couple of the resellers.  And it's actually run by a guy that has been with the Company for a very long time- he's doing a very good job. ***It's up and running. We have about 75 people in it.  So that's the only minor trend that we have done, but that's done actually a month ago.  So we don't anticipate any changes, really, in the Americas at this point in time***.

67.     In stark contrast to his public statements, by this time defendants Chuang and Klein, as alleged by a former VP, had been advised of falling licensing revenues, slow customer transition to 8.1 and the failed sales organization, by virtue of the sales forecast presented by the former VP on February 1, 2004.  Defendants' materially false and misleading statements concerning the "minor trend" in the organization of the Americas' sales force, which was allegedly "up and running" and "done actually a month ago"- was diametrically opposed to the bleak sales forecast and product transition issues identified by the former VP for defendants.

68.     During the week following the Company's February 19, 2004 release of its 4Q:04 results, defendants collectively sold over $13.6 million worth of BEA stock.  Specifically, on February 27, 2004, defendant Chuang exercised options to buy 77,200 Company shares for $4.33 per share.  Between February 24 to February 27, 2004, defendant Chuang then sold 400,000 shares for prices ranging from $13.30 to $14.27 per share, for a total of $5.45 million in proceeds.  From February 24 to February 27, 2004, defendant Klein exercised options to buy 300,504 Company

1    shares for prices ranging from $2.75 to $3.78 per share, and sold 352,500 shares for prices ranging

2    from $13.35 to $14.27, for a total of $4.79 million in proceeds.  On February 26, 2004, defendant

3    Ashburn exercised 100,000 Company shares for $2.78 per share and sold each of those shares for

4    $13.35, for a net gain of $1.3 million.  In addition, on February 27, 2004, defendant Coleman

5    exercised options to buy 2,460 Company shares for $6.43 per share.  Defendant Coleman then sold

6    150,000  BEA  shares  for  $14  per  share,  for  a  total  of  $2.1  million  in  proceeds.

7            69.      Defendants Chuang, Klein, Ashburn and Coleman sold their $13.6 million of BEA

8    stock within days of the February 19, 2004, 4Q:04 earnings announcement to ensure they could reap

9    the profits of their false and misleading disseminations before the Company's true state of affairs

10   would come to light.  After the sales, defendant Klein owned a mere 2,370 shares and defendant

11   Ashburn owned no shares.

12           70.      On April 13, 2004, the Individual Defendants caused BEA to issue a press release

13   entitled "BEA to Launch WebLogic Pro Magazine at eWorld 2004."  In that press release, the

14   Individual Defendants continued to mislead shareholders regarding the demand for BEA WebLogic

15   Platform 8.1.  According to the Individual Defendants, "'[s]ince the release of BEA WebLogic

16   Platform 8.1, there has been a *swell of enthusiasm* from the developer community around [BEA's]

17   integrated application platform suite approach to development and deployment of applications[.]'"

18           71.      Defendants' contention of this "swell of enthusiasm" misled shareholders into

19   believing there was more demand for WebLogic Platform 8.1 than actually existed, a fact which

20   defendants were well aware of in light of the February 1, 2004 sales forecast presentation and what

21   had actually developed in the two months following the report.

22                                    **THE TRUTH BEGINS TO EMERGE**

23           72.      On May 13, 2004, the Individual Defendants caused BEA to issue a press release

24   entitled "BEA Reports First Quarter Financial Results; Adoption of Service-Oriented Architectures

25   Is Beginning, Helping Businesses Improve Efficiency, Adaptability and Responsiveness."  The press

26   release stated in part:

27           BEA Systems, Inc., the world's leading application infrastructure software company,
             today announced results of its fiscal first quarter.  For the first quarter ended April
28           30, 2004, BEA reported total revenues of $262.6 million, up 11% from $237.3

million in last year's first quarter.  For the first quarter, BEA reported license revenues of $120.2 million, down 2% from $122.3 million a year ago.  In the quarter, BEA generated cash flow from operations of $82.1 million, up 103% from $40.5 million a year ago.  BEA's balance of cash and short-term investments was $1,561 million as of April 30, 2004.

For the first quarter, on a generally accepted accounting principles ("GAAP") basis, BEA reported operating income of $39.1 million, up 14% from $34.2 million a year ago.  BEA reported first quarter GAAP operating margin of 14.9%, GAAP net income of $25.3 million, and GAAP diluted net income per share of $0.06.

For the first quarter, BEA reported pro forma operating income of $50.8 million, a 28% increase over last year.  BEA reported pro forma operating margin of 19.4%, up from 16.9% in last year's first quarter.  BEA reported pro forma net income of $33.5 million and pro forma diluted net income per share of $0.08 for the first quarter.  Pro forma results exclude acquisition-related expenses, net gains or losses on investments in equity securities, employer payroll taxes on stock options, facilities consolidation and other non-recurring charges.  A reconciliation of pro forma adjustments is summarized on page five of this release.  For full details on BEA's reported results, see the financial tables accompanying this release.

"We signed 17 license deals over $1 million dollars in Q1.  While this is the most we've ever signed in a Q1, we are disappointed that we did not meet our license revenue plans, especially in the Americas," said Alfred Chuang, BEA's founder, chairman and CEO.  "Customers are beginning new projects, and many of our consulting engagements ramped up through the course of the first quarter and into the second.  We are encouraged by the opportunities that creates for us, as those projects progress toward deployment throughout the year."

"In live deployments, WebLogic Platform 8.1 is helping customers reduce integration costs, make their developers more productive and build more flexible architectures.   As customers adopt service-oriented architectures, WebLogic Platform provides the infrastructure they need," Chuang continued.   "Service-oriented architectures more closely align IT with business processes, and help businesses improve their efficiency, adaptability and responsiveness.  Customers are focusing on business processes and standard interfaces, rather than underlying technical complexity.  Delivering the promise of service-oriented architectures requires a robust, standards-based, easy to use platform.  BEA WebLogic Platform and BEA WebLogic Workshop help customers quickly and efficiently adopt service-oriented architectures, as evidenced by the projects our customers are implementing.  BEA is well-positioned to help customers achieve new levels of productivity, enterprise compatibility and adaptability."

73.     On May 13, 2004, after the close of the market, the Individual Defendants caused the Company to issue a press release reporting first quarter results.  Included therein,  the Individual Defendants announced that license revenues had come in at $120.2 million for the year, well short of the $127-$132 million guidance they had provided as recently as February 19, 2004.

74.     In the Company's earnings conference call conducted on May 13, 2004, defendant Chuang offered the following comments concerning the disappointing revenues reported:

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

[O]ur Americas performance was below expectation, and was impacted by several factors.  This includes seasonality, product transition **and some coverage model changes we have made in the organization.**

I will give you some examples.  **During the quarter, we created a general accounts region (ph) to focus on medium-sized businesses and coordinate with the Americas VAR channel that we're building.  We reemphasized the inside sales organization and consolidated the organization into a central region.  In some cases, those changes meant reassigning coverage of some of our existing accounts and prospects.  The transition into the new coverage model and transition of customer relationships have taken longer than we expected.  All of this resulted in some near-term disruption.**

The coverage model changes in the general accounts and inside sales organization were completed in the middle of Q1, and we don't plan on any more structural changes at this point in time.  **The inside sales organization is stabilized,** and we are starting to see results of both the general accounts and also the inside sales organization. For example, the general accounts group is now working with 12 new VARs signing up today in the Americas.

75.     Thus, contrary to his report to analysts on February 19, 2004 and representations throughout the Relevant Period as to the readiness and stability of the sales force, defendant Chuang was now acknowledging that the Company was intimately familiar with the difficulty the sales force was having with the new product as substantive changes had been made in the North American sales force at the same time as positive statements were being made to the investing public regarding the same topic.

76.     On this news, the Company's shares were rocked, plummeting 30% to $8 on record volume of 74 million, which was more than 9.67 times the average trading volume during the preceding six months.

**REASONS THE STATEMENTS WERE IMPROPER**

77.     The true facts which were known to the Individual Defendants but actively concealed from the public were as follows:

(a)     That the Company was experiencing material sales execution problems in its licensing division. This would result in license reserve being down in the comparable quarter and in the sequential quarter.  This clearly was apparent to defendants as they monitored the Company's North American sales territory which was well below quota;

(b)     That during the preceding quarter, the Company's sales staff and management were attempting to reorganize; however, in doing so, the Company's sales were actually disrupted.

1  In fact, the head of North American Sales (Alan Fuge) resigned.  The Company's own sales staff did

2  not even know what their territories or quotas were because the Company's executives failed to

3  provide that to them in a timely manner.  Defendant Chuang admitted as much to third parties;

4          (c)    That the Company's WebLogic 8.1 Platform was far from "revolutionary" and

5  was not selling as defendants claimed.  In fact, defendants knew that and admitted to third parties

6  that the WebLogic 8.1 Platform was actually too new in the marketplace to experience strong

7  growth.  Moreover, this would contribute to a year-to-year decline in license reserve – the first time

8  in four quarters;

9          (d)    That the coverage of small and medium-sized businesses was transferred to

10  the General Accounts Team – which disrupted the Company's North American reserves; and

11          (e)    The Company was experiencing weakness in its telecom vertical business –

12  not strength

13      78.    As a result of the Individual Defendants actions, BEA's market capitalization has

14  been damaged by over $2 billion.  At the same time that the defendants were causing BEA to suffer

15  such devastation of its market capitalization, the Insider Selling Defendants fared much better by

16  selling over $20 million of their personally held stock.

17  **ILLEGAL INSIDER SELLING**

18      79.    While in possession of the undisclosed material adverse information, the Insider

19  Selling Defendants sold the following shares of BEA stock:

| Name | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| Thomas Ashburn | 2/26/2004 | 100000 | $ 13.35 | $ 1,335,000.00 |
| | | **100000** | | **$ 1,335,000.00** |
| William T. Coleman, III | 1/5/2004 | 150000 | $ 13.00 | $ 1,950,000.00 |
| | 2/27/2004 | 147540 | $ 14.00 | $ 2,065,560.00 |
| | 2/27/2004 | 2460 | $ 14.00 | $ 34,440.00 |
| | | **300000** | | **$ 4,050,000.00** |
| Charles III, III | 1/6/2004 | 33333 | $ 13.08 | $ 435,995.64 |
| | 1/7/2004 | 33333 | $ 13.12 | $ 437,328.96 |
| | 1/8/2004 | 33334 | $ 13.31 | $ 443,675.54 |
| | | **100000** | | **$ 1,317,000.14** |
| Alfred Chuang | 11/18/2003 | 15000 | $ 12.30 | $ 184,555.50 |
| | 11/18/2003 | 9640 | $ 12.34 | $ 118,957.60 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | | 11/18/2003 | 100 | $ | 12.29 | $ | 1,229.00 |
| | | 11/18/2003 | 100 | $ | 12.28 | $ | 1,228.00 |
| 2 | | 11/18/2003 | 9772 | $ | 12.31 | $ | 120,326.54 |
| | | 11/18/2003 | 4600 | $ | 12.29 | $ | 56,539.98 |
| 3 | | 11/18/2003 | 2100 | $ | 12.25 | $ | 25,725.00 |
| | | 11/18/2003 | 8509 | $ | 12.36 | $ | 105,212.93 |
| 4 | | 11/18/2003 | 100 | $ | 12.26 | $ | 1,226.00 |
| | | 11/18/2003 | 2200 | $ | 12.32 | $ | 27,104.00 |
| 5 | | 11/18/2003 | 3000 | $ | 12.30 | $ | 36,900.00 |
| | | 11/18/2003 | 3973 | $ | 12.31 | $ | 48,907.63 |
| 6 | | 11/18/2003 | 10000 | $ | 12.26 | $ | 122,600.00 |
| | | 11/18/2003 | 8060 | $ | 12.32 | $ | 99,311.29 |
| 7 | | 11/18/2003 | 1591 | $ | 12.40 | $ | 19,728.40 |
| | | 11/18/2003 | 1400 | $ | 12.34 | $ | 17,269.00 |
| 8 | | 11/18/2003 | 1300 | $ | 12.30 | $ | 15,983.50 |
| | | 11/18/2003 | 100 | $ | 12.31 | $ | 1,231.00 |
| 9 | | 11/18/2003 | 1000 | $ | 12.29 | $ | 12,290.00 |
| | | 11/18/2003 | 16 | $ | 12.40 | $ | 198.40 |
| 10 | | 11/18/2003 | 17439 | $ | 12.27 | $ | 214,014.90 |
| 11 | | 11/19/2003 | 30000 | $ | 12.07 | $ | 362,100.00 |
| | | 11/19/2003 | 10000 | $ | 12.09 | $ | 120,900.00 |
| 12 | | 11/19/2003 | 25000 | $ | 12.08 | $ | 302,000.00 |
| | | 11/19/2003 | 10000 | $ | 12.06 | $ | 120,600.00 |
| 13 | | 11/19/2003 | 25000 | $ | 12.10 | $ | 302,500.00 |
| | | 11/20/2003 | 2100 | $ | 12.18 | $ | 25,567.50 |
| 14 | | 11/20/2003 | 400 | $ | 12.25 | $ | 4,900.00 |
| | | 11/20/2003 | 500 | $ | 12.17 | $ | 6,085.00 |
| 15 | | 11/20/2003 | 1000 | $ | 12.23 | $ | 12,230.00 |
| | | 11/20/2003 | 500 | $ | 12.21 | $ | 6,105.00 |
| 16 | | 11/20/2003 | 500 | $ | 12.16 | $ | 6,080.00 |
| | | 11/20/2003 | 600 | $ | 12.35 | $ | 7,408.98 |
| 17 | | 11/20/2003 | 1100 | $ | 12.15 | $ | 13,365.00 |
| | | 11/20/2003 | 1200 | $ | 12.19 | $ | 14,628.00 |
| 18 | | 11/20/2003 | 2000 | $ | 12.38 | $ | 24,769.00 |
| | | 11/20/2003 | 400 | $ | 12.50 | $ | 4,998.00 |
| 19 | | 11/20/2003 | 2900 | $ | 12.16 | $ | 35,264.00 |
| | | 11/20/2003 | 700 | $ | 12.26 | $ | 8,582.00 |
| 20 | | 11/20/2003 | 1200 | $ | 12.20 | $ | 14,640.00 |
| | | 11/20/2003 | 1400 | $ | 12.18 | $ | 17,052.00 |
| 21 | | 11/20/2003 | 300 | $ | 12.22 | $ | 3,666.00 |
| | | 11/20/2003 | 900 | $ | 12.32 | $ | 11,086.02 |
| 22 | | 11/20/2003 | 900 | $ | 12.24 | $ | 11,016.00 |
| 23 | | 11/20/2003 | 25000 | $ | 12.17 | $ | 304,250.00 |
| | | 11/20/2003 | 3500 | $ | 12.17 | $ | 42,595.00 |
| 24 | | 11/20/2003 | 500 | $ | 12.46 | $ | 6,228.00 |
| | | 11/20/2003 | 3300 | $ | 12.49 | $ | 41,217.00 |
| 25 | | 11/20/2003 | 600 | $ | 12.47 | $ | 7,482.00 |
| | | 11/20/2003 | 200 | $ | 12.48 | $ | 2,496.00 |
| 26 | | 11/20/2003 | 2200 | $ | 12.35 | $ | 27,170.00 |
| | | 11/20/2003 | 300 | $ | 12.43 | $ | 3,729.00 |
| 27 | | 11/20/2003 | 116 | $ | 12.42 | $ | 1,440.72 |
| | | 11/20/2003 | 300 | $ | 12.45 | $ | 3,735.99 |
| 28 | | 11/20/2003 | 1700 | $ | 12.34 | $ | 20,978.00 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | Date | Shares | | Price | | Amount |
|---|---|---|---|---|---|---|---|
| 1 | | 11/20/2003 | 1600 | $ | 12.30 | $ | 19,684.00 |
| | | 11/20/2003 | 400 | $ | 12.32 | $ | 4,928.00 |
| 2 | | 11/20/2003 | 12900 | $ | 12.41 | $ | 160,089.00 |
| | | 11/20/2003 | 1400 | $ | 12.44 | $ | 17,416.00 |
| 3 | | 11/20/2003 | 1100 | $ | 12.36 | $ | 13,596.00 |
| | | 11/20/2003 | 1172 | $ | 12.31 | $ | 14,427.32 |
| 4 | | 11/20/2003 | 1200 | $ | 12.30 | $ | 14,760.00 |
| | | 11/20/2003 | 3200 | $ | 12.48 | $ | 39,936.00 |
| 5 | | 11/20/2003 | 2100 | $ | 12.17 | $ | 25,563.93 |
| | | 11/20/2003 | 100 | $ | 12.49 | $ | 1,249.10 |
| 6 | | 11/20/2003 | 5500 | $ | 12.15 | $ | 66,845.35 |
| | | 11/20/2003 | 228 | $ | 12.31 | $ | 2,806.91 |
| 7 | | 11/20/2003 | 1300 | $ | 12.27 | $ | 15,951.00 |
| | | 11/20/2003 | 400 | $ | 12.45 | $ | 4,980.00 |
| 8 | | 11/20/2003 | 2000 | $ | 12.24 | $ | 24,480.00 |
| | | 11/20/2003 | 800 | $ | 12.43 | $ | 9,944.00 |
| 9 | | 11/20/2003 | 600 | $ | 12.34 | $ | 7,404.00 |
| | | 11/20/2003 | 200 | $ | 12.37 | $ | 2,474.00 |
| 10 | | 11/20/2003 | 1184 | $ | 12.46 | $ | 14,752.64 |
| | | 11/20/2003 | 3800 | $ | 12.33 | $ | 46,854.00 |
| 11 | | 11/20/2003 | 1400 | $ | 12.49 | $ | 17,486.00 |
| | | 11/20/2003 | 1100 | $ | 12.42 | $ | 13,662.00 |
| 12 | | 11/21/2003 | 7000 | $ | 12.44 | $ | 87,059.70 |
| | | 11/21/2003 | 21271 | $ | 12.43 | $ | 264,398.53 |
| 13 | | 11/21/2003 | 3000 | $ | 12.41 | $ | 37,230.00 |
| | | 11/21/2003 | 1500 | $ | 12.47 | $ | 18,705.15 |
| 14 | | 11/21/2003 | 3500 | $ | 12.48 | $ | 43,680.35 |
| | | 11/21/2003 | 10300 | $ | 12.45 | $ | 128,235.00 |
| 15 | | 11/21/2003 | 200 | $ | 12.47 | $ | 2,494.00 |
| | | 11/21/2003 | 36600 | $ | 12.42 | $ | 454,572.00 |
| 16 | | 11/21/2003 | 7600 | $ | 12.42 | $ | 94,401.88 |
| | | 11/21/2003 | 2529 | $ | 12.43 | $ | 31,436.99 |
| 17 | | 11/21/2003 | 2000 | $ | 12.43 | $ | 24,852.00 |
| | | 11/21/2003 | 1500 | $ | 12.48 | $ | 18,720.00 |
| 18 | | 11/21/2003 | 3000 | $ | 12.45 | $ | 37,358.40 |
| | | 2/24/2004 | 1800 | $ | 13.43 | $ | 24,174.00 |
| 19 | | 2/24/2004 | 1400 | $ | 13.46 | $ | 18,844.00 |
| | | 2/24/2004 | 1500 | $ | 13.40 | $ | 20,100.00 |
| 20 | | 2/24/2004 | 2100 | $ | 13.34 | $ | 28,014.00 |
| | | 2/24/2004 | 1700 | $ | 13.46 | $ | 22,882.00 |
| 21 | | 2/24/2004 | 1732 | $ | 13.44 | $ | 23,278.08 |
| | | 2/24/2004 | 2200 | $ | 13.45 | $ | 29,590.00 |
| 22 | | 2/24/2004 | 1800 | $ | 13.45 | $ | 24,210.00 |
| | | 2/24/2004 | 1900 | $ | 13.36 | $ | 25,384.00 |
| 23 | | 2/24/2004 | 2400 | $ | 13.41 | $ | 32,184.00 |
| | | 2/24/2004 | 2108 | $ | 13.30 | $ | 28,036.40 |
| 24 | | 2/24/2004 | 2100 | $ | 13.40 | $ | 28,140.00 |
| | | 2/24/2004 | 2500 | $ | 13.45 | $ | 33,625.00 |
| 25 | | 2/24/2004 | 2244 | $ | 13.39 | $ | 30,047.16 |
| | | 2/24/2004 | 2400 | $ | 13.40 | $ | 32,160.00 |
| 26 | | 2/24/2004 | 2800 | $ | 13.37 | $ | 37,436.00 |
| | | 2/24/2004 | 2400 | $ | 13.42 | $ | 32,208.00 |
| 27 | | 2/24/2004 | 2500 | $ | 13.40 | $ | 33,500.00 |
| 28 | | | | | | | |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | |
|---|---|---|---|
| 2/24/2004 | 5500 | $ 13.41 | $ 73,755.00 |
| 2/24/2004 | 2700 | $ 13.42 | $ 36,234.00 |
| 2/24/2004 | 2800 | $ 13.34 | $ 37,352.00 |
| 2/24/2004 | 10900 | $ 13.40 | $ 146,060.00 |
| 2/24/2004 | 3400 | $ 13.43 | $ 45,662.00 |
| 2/24/2004 | 3615 | $ 13.43 | $ 48,549.45 |
| 2/24/2004 | 7068 | $ 13.43 | $ 94,923.24 |
| 2/24/2004 | 1700 | $ 13.44 | $ 22,848.00 |
| 2/24/2004 | 300 | $ 13.39 | $ 4,017.00 |
| 2/24/2004 | 400 | $ 13.48 | $ 5,392.00 |
| 2/24/2004 | 100 | $ 13.41 | $ 1,341.00 |
| 2/24/2004 | 514 | $ 13.45 | $ 6,913.30 |
| 2/24/2004 | 600 | $ 13.43 | $ 8,058.00 |
| 2/24/2004 | 200 | $ 13.48 | $ 2,696.00 |
| 2/24/2004 | 700 | $ 13.40 | $ 9,380.00 |
| 2/24/2004 | 800 | $ 13.40 | $ 10,720.00 |
| 2/24/2004 | 500 | $ 13.42 | $ 6,710.00 |
| 2/24/2004 | 886 | $ 13.46 | $ 11,925.56 |
| 2/24/2004 | 900 | $ 13.36 | $ 12,024.00 |
| 2/24/2004 | 700 | $ 13.38 | $ 9,366.00 |
| 2/24/2004 | 1000 | $ 13.40 | $ 13,400.00 |
| 2/24/2004 | 1000 | $ 13.41 | $ 13,410.00 |
| 2/24/2004 | 856 | $ 13.44 | $ 11,504.64 |
| 2/24/2004 | 1100 | $ 13.42 | $ 14,762.00 |
| 2/24/2004 | 1200 | $ 13.51 | $ 16,212.00 |
| 2/24/2004 | 900 | $ 13.40 | $ 12,060.00 |
| 2/24/2004 | 1300 | $ 13.41 | $ 17,433.00 |
| 2/24/2004 | 1300 | $ 13.46 | $ 17,498.00 |
| 2/24/2004 | 1100 | $ 13.40 | $ 14,740.00 |
| 2/24/2004 | 1392 | $ 13.32 | $ 18,541.44 |
| 2/24/2004 | 1400 | $ 13.38 | $ 18,732.00 |
| 2/24/2004 | 1285 | $ 13.45 | $ 17,283.25 |
| 2/24/2004 | 1400 | $ 13.44 | $ 18,816.00 |
| 2/24/2004 | 1400 | $ 13.46 | $ 18,844.00 |
| 2/24/2004 | 1300 | $ 13.52 | $ 17,576.00 |
| 2/24/2004 | 100 | $ 13.47 | $ 1,347.00 |
| 2/24/2004 | 100 | $ 13.49 | $ 1,349.00 |
| 2/25/2004 | 2800 | $ 13.62 | $ 38,136.00 |
| 2/25/2004 | 3200 | $ 13.63 | $ 43,616.00 |
| 2/25/2004 | 3500 | $ 13.54 | $ 47,390.00 |
| 2/25/2004 | 3500 | $ 13.58 | $ 47,530.00 |
| 2/25/2004 | 3500 | $ 13.59 | $ 47,565.00 |
| 2/25/2004 | 3500 | $ 13.65 | $ 47,775.00 |
| 2/25/2004 | 4000 | $ 13.57 | $ 54,280.00 |
| 2/25/2004 | 4000 | $ 13.61 | $ 54,440.00 |
| 2/25/2004 | 4100 | $ 13.63 | $ 55,883.00 |
| 2/25/2004 | 7580 | $ 13.64 | $ 103,391.20 |
| 2/25/2004 | 7820 | $ 13.48 | $ 105,413.60 |
| 2/25/2004 | 700 | $ 13.60 | $ 9,520.00 |
| 2/25/2004 | 2670 | $ 13.60 | $ 36,312.00 |
| 2/25/2004 | 2800 | $ 13.58 | $ 38,024.00 |
| 2/25/2004 | 1300 | $ 13.67 | $ 17,771.00 |
| 2/25/2004 | 200 | $ 13.61 | $ 2,722.00 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | |
|---|---|---|---|---|---|
| 1 | 2/25/2004 | 700 | $ | 13.48 | $ | 9,436.00 |
| | 2/25/2004 | 1400 | $ | 13.63 | $ | 19,082.00 |
| 2 | 2/25/2004 | 1300 | $ | 13.62 | $ | 17,706.00 |
| | 2/25/2004 | 1300 | $ | 13.66 | $ | 17,758.00 |
| 3 | 2/25/2004 | 1400 | $ | 13.66 | $ | 19,124.00 |
| | 2/25/2004 | 1400 | $ | 13.56 | $ | 18,984.00 |
| 4 | 2/25/2004 | 1400 | $ | 13.62 | $ | 19,068.00 |
| | 2/25/2004 | 1600 | $ | 13.64 | $ | 21,824.00 |
| 5 | 2/25/2004 | 1400 | $ | 13.64 | $ | 19,096.00 |
| | 2/25/2004 | 1400 | $ | 13.65 | $ | 19,110.00 |
| 6 | 2/25/2004 | 2100 | $ | 13.58 | $ | 28,518.00 |
| | 2/25/2004 | 1400 | $ | 13.67 | $ | 19,138.00 |
| 7 | 2/25/2004 | 1500 | $ | 13.58 | $ | 20,370.00 |
| | 2/25/2004 | 2100 | $ | 13.63 | $ | 28,623.00 |
| 8 | 2/25/2004 | 2000 | $ | 13.64 | $ | 27,280.00 |
| | 2/25/2004 | 2000 | $ | 13.66 | $ | 27,320.00 |
| 9 | 2/25/2004 | 2100 | $ | 13.65 | $ | 28,665.00 |
| | 2/25/2004 | 2100 | $ | 13.60 | $ | 28,560.00 |
| 10 | 2/25/2004 | 2100 | $ | 13.61 | $ | 28,581.00 |
| 11 | 2/25/2004 | 2594 | $ | 13.63 | $ | 35,356.22 |
| | 2/25/2004 | 2100 | $ | 13.63 | $ | 28,623.00 |
| 12 | 2/25/2004 | 2100 | $ | 13.64 | $ | 28,644.00 |
| | 2/25/2004 | 2800 | $ | 13.61 | $ | 38,108.00 |
| 13 | 2/25/2004 | 2230 | $ | 13.61 | $ | 30,350.30 |
| | 2/25/2004 | 2306 | $ | 13.61 | $ | 31,384.66 |
| 14 | 2/26/2004 | 600 | $ | 13.85 | $ | 8,310.00 |
| | 2/26/2004 | 2800 | $ | 13.41 | $ | 37,548.00 |
| 15 | 2/26/2004 | 1400 | $ | 13.37 | $ | 18,718.00 |
| | 2/26/2004 | 1700 | $ | 13.40 | $ | 22,780.00 |
| 16 | 2/26/2004 | 3800 | $ | 13.51 | $ | 51,338.00 |
| | 2/26/2004 | 2100 | $ | 13.41 | $ | 28,161.00 |
| 17 | 2/26/2004 | 1100 | $ | 13.42 | $ | 14,762.00 |
| | 2/26/2004 | 1900 | $ | 13.61 | $ | 25,859.00 |
| 18 | 2/26/2004 | 600 | $ | 13.43 | $ | 8,058.00 |
| | 2/26/2004 | 2400 | $ | 13.44 | $ | 32,256.00 |
| 19 | 2/26/2004 | 1200 | $ | 13.41 | $ | 16,092.00 |
| | 2/26/2004 | 2100 | $ | 13.45 | $ | 28,245.00 |
| 20 | 2/26/2004 | 614 | $ | 13.46 | $ | 8,264.44 |
| | 2/26/2004 | 1200 | $ | 13.43 | $ | 16,116.00 |
| 21 | 2/26/2004 | 620 | $ | 13.46 | $ | 8,345.20 |
| | 2/26/2004 | 1300 | $ | 13.47 | $ | 17,511.00 |
| 22 | 2/26/2004 | 600 | $ | 13.44 | $ | 8,064.00 |
| | 2/26/2004 | 2200 | $ | 13.47 | $ | 29,634.00 |
| 23 | 2/26/2004 | 2400 | $ | 13.48 | $ | 32,352.00 |
| | 2/26/2004 | 800 | $ | 13.46 | $ | 10,768.00 |
| 24 | 2/26/2004 | 2800 | $ | 13.49 | $ | 37,772.00 |
| | 2/26/2004 | 1200 | $ | 13.50 | $ | 16,200.00 |
| 25 | 2/26/2004 | 700 | $ | 13.47 | $ | 9,429.00 |
| 26 | 2/26/2004 | 2071 | $ | 13.50 | $ | 27,958.50 |
| | 2/26/2004 | 1800 | $ | 13.50 | $ | 24,300.00 |
| 27 | 2/26/2004 | 3200 | $ | 13.48 | $ | 43,136.00 |
| | 2/26/2004 | 1800 | $ | 13.50 | $ | 24,300.00 |
| 28 | 2/26/2004 | 742 | $ | 13.50 | $ | 10,017.00 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | |
|---|---|---|---|---|---|
| 1 | 2/26/2004 | 5858 | $ | 13.50 | $ | 79,083.00 |
| | 2/26/2004 | 200 | $ | 13.51 | $ | 2,702.00 |
| 2 | 2/26/2004 | 1400 | $ | 13.51 | $ | 18,914.00 |
| | 2/26/2004 | 1700 | $ | 13.50 | $ | 22,950.00 |
| 3 | 2/26/2004 | 1300 | $ | 13.52 | $ | 17,576.00 |
| | 2/26/2004 | 3000 | $ | 13.53 | $ | 40,590.00 |
| 4 | 2/26/2004 | 2400 | $ | 13.52 | $ | 32,448.00 |
| | 2/26/2004 | 1200 | $ | 13.56 | $ | 16,272.00 |
| 5 | 2/26/2004 | 2100 | $ | 13.56 | $ | 28,476.00 |
| | 2/26/2004 | 1029 | $ | 13.52 | $ | 13,912.08 |
| 6 | 2/26/2004 | 800 | $ | 13.59 | $ | 10,872.00 |
| | 2/26/2004 | 2600 | $ | 13.60 | $ | 35,360.00 |
| 7 | 2/26/2004 | 1200 | $ | 13.54 | $ | 16,248.00 |
| | 2/26/2004 | 100 | $ | 13.61 | $ | 1,361.00 |
| 8 | 2/26/2004 | 2400 | $ | 13.62 | $ | 32,688.00 |
| | 2/26/2004 | 700 | $ | 13.56 | $ | 9,492.00 |
| 9 | 2/26/2004 | 1200 | $ | 13.74 | $ | 16,488.00 |
| | 2/26/2004 | 600 | $ | 13.75 | $ | 8,250.00 |
| 10 | 2/26/2004 | 100 | $ | 13.60 | $ | 1,360.00 |
| 11 | 2/26/2004 | 2000 | $ | 13.78 | $ | 27,560.00 |
| | 2/26/2004 | 1400 | $ | 13.79 | $ | 19,306.00 |
| 12 | 2/26/2004 | 3500 | $ | 13.62 | $ | 47,670.00 |
| | 2/26/2004 | 1300 | $ | 13.80 | $ | 17,940.00 |
| 13 | 2/26/2004 | 1400 | $ | 13.81 | $ | 19,334.00 |
| | 2/26/2004 | 600 | $ | 13.76 | $ | 8,256.00 |
| 14 | 2/26/2004 | 1200 | $ | 13.82 | $ | 16,584.00 |
| | 2/26/2004 | 1500 | $ | 13.82 | $ | 20,730.00 |
| 15 | 2/26/2004 | 3900 | $ | 13.79 | $ | 53,781.00 |
| | 2/26/2004 | 400 | $ | 13.83 | $ | 5,532.00 |
| 16 | 2/26/2004 | 600 | $ | 13.84 | $ | 8,304.00 |
| | 2/26/2004 | 2500 | $ | 13.81 | $ | 34,525.00 |
| 17 | 2/26/2004 | 1666 | $ | 13.82 | $ | 23,024.12 |
| | 2/26/2004 | 1300 | $ | 13.52 | $ | 17,576.00 |
| 18 | 2/26/2004 | 1100 | $ | 13.52 | $ | 14,872.00 |
| | 2/27/2004 | 600 | $ | 14.18 | $ | 8,508.00 |
| 19 | 2/27/2004 | 450 | $ | 14.13 | $ | 6,358.50 |
| | 2/27/2004 | 1200 | $ | 14.23 | $ | 17,076.00 |
| 20 | 2/27/2004 | 1200 | $ | 14.19 | $ | 17,028.00 |
| | 2/27/2004 | 1200 | $ | 14.15 | $ | 16,980.00 |
| 21 | 2/27/2004 | 1200 | $ | 14.27 | $ | 17,124.00 |
| | 2/27/2004 | 900 | $ | 14.25 | $ | 12,825.00 |
| 22 | 2/27/2004 | 1200 | $ | 14.21 | $ | 17,052.00 |
| | 2/27/2004 | 2800 | $ | 13.80 | $ | 38,640.00 |
| 23 | 2/27/2004 | 3500 | $ | 13.81 | $ | 48,335.00 |
| | 2/27/2004 | 4000 | $ | 13.78 | $ | 55,120.00 |
| 24 | 2/27/2004 | 1200 | $ | 13.83 | $ | 16,596.00 |
| | 2/27/2004 | 700 | $ | 13.83 | $ | 9,681.00 |
| 25 | 2/27/2004 | 700 | $ | 13.82 | $ | 9,674.00 |
| | 2/27/2004 | 1200 | $ | 13.85 | $ | 16,620.00 |
| 26 | 2/27/2004 | 600 | $ | 13.85 | $ | 8,310.00 |
| | 2/27/2004 | 2600 | $ | 13.84 | $ | 35,984.00 |
| 27 | 2/27/2004 | 1400 | $ | 13.86 | $ | 19,404.00 |
| 28 | 2/27/2004 | 1000 | $ | 13.87 | $ | 13,870.00 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | |
|---|---|---|---|---|---|
| 1 | 2/27/2004 | 1245 | $ | 13.86 | $ | 17,255.70 |
| | 2/27/2004 | 1300 | $ | 13.87 | $ | 18,031.00 |
| 2 | 2/27/2004 | 1200 | $ | 13.88 | $ | 16,656.00 |
| | 2/27/2004 | 1805 | $ | 13.87 | $ | 25,035.35 |
| 3 | 2/27/2004 | 600 | $ | 14.09 | $ | 8,454.00 |
| | 2/27/2004 | 1200 | $ | 14.12 | $ | 16,944.00 |
| 4 | 2/27/2004 | 1200 | $ | 14.02 | $ | 16,824.00 |
| | 2/27/2004 | 200 | $ | 14.02 | $ | 2,804.00 |
| 5 | 2/27/2004 | 1800 | $ | 14.01 | $ | 25,218.00 |
| | 2/27/2004 | 600 | $ | 14.03 | $ | 8,418.00 |
| 6 | 2/27/2004 | 600 | $ | 14.04 | $ | 8,424.00 |
| | 2/27/2004 | 1300 | $ | 14.02 | $ | 18,226.00 |
| 7 | 2/27/2004 | 400 | $ | 14.05 | $ | 5,620.00 |
| | 2/27/2004 | 1800 | $ | 14.06 | $ | 25,308.00 |
| 8 | 2/27/2004 | 1200 | $ | 14.05 | $ | 16,860.00 |
| | 2/27/2004 | 1200 | $ | 14.08 | $ | 16,896.00 |
| 9 | 2/27/2004 | 300 | $ | 14.08 | $ | 4,224.00 |
| | 2/27/2004 | 600 | $ | 14.07 | $ | 8,442.00 |
| 10 | 2/27/2004 | 1300 | $ | 13.88 | $ | 18,044.00 |
| | 2/27/2004 | 1800 | $ | 13.88 | $ | 24,984.00 |
| 11 | 2/27/2004 | 1800 | $ | 14.08 | $ | 25,344.00 |
| | 2/27/2004 | 1900 | $ | 13.89 | $ | 26,391.00 |
| 12 | 2/27/2004 | 1500 | $ | 13.89 | $ | 20,835.00 |
| | 2/27/2004 | 1600 | $ | 13.88 | $ | 22,208.00 |
| 13 | 2/27/2004 | 1200 | $ | 13.92 | $ | 16,704.00 |
| | 2/27/2004 | 700 | $ | 13.89 | $ | 9,723.00 |
| 14 | 2/27/2004 | 1200 | $ | 13.89 | $ | 16,668.00 |
| | 2/27/2004 | 1300 | $ | 13.92 | $ | 18,096.00 |
| 15 | 2/27/2004 | 6000 | $ | 13.92 | $ | 83,520.00 |
| | 2/27/2004 | 2000 | $ | 13.90 | $ | 27,800.00 |
| 16 | 2/27/2004 | 4800 | $ | 13.93 | $ | 66,864.00 |
| | 2/27/2004 | 1200 | $ | 13.93 | $ | 16,716.00 |
| 17 | 2/27/2004 | 900 | $ | 13.92 | $ | 12,528.00 |
| | 2/27/2004 | 2000 | $ | 13.99 | $ | 27,980.00 |
| 18 | 2/27/2004 | 2000 | $ | 13.97 | $ | 27,940.00 |
| | 2/27/2004 | 700 | $ | 13.93 | $ | 9,751.00 |
| 19 | 2/27/2004 | 1200 | $ | 14.01 | $ | 16,812.00 |
| | 2/27/2004 | 1200 | $ | 14.00 | $ | 16,800.00 |
| 20 | 2/27/2004 | 3600 | $ | 13.99 | $ | 50,364.00 |
| | 2/27/2004 | 1300 | $ | 13.94 | $ | 18,122.00 |
| 21 | 2/27/2004 | 1400 | $ | 14.01 | $ | 19,614.00 |
| | 2/27/2004 | 900 | $ | 14.00 | $ | 12,600.00 |
| 22 | 2/27/2004 | 900 | $ | 13.95 | $ | 12,555.00 |
| | 2/27/2004 | 2000 | $ | 13.94 | $ | 27,880.00 |
| 23 | 2/27/2004 | 2700 | $ | 14.01 | $ | 37,827.00 |
| | 2/27/2004 | 600 | $ | 13.97 | $ | 8,382.00 |
| 24 | 2/27/2004 | 2100 | $ | 13.95 | $ | 29,295.00 |
| | 2/27/2004 | 700 | $ | 13.95 | $ | 9,765.00 |
| 25 | 2/27/2004 | 1300 | $ | 13.97 | $ | 18,161.00 |
| | 5/18/2004 | 14008 | $ | 8.21 | $ | 115,056.11 |
| 26 | 5/18/2004 | 8894 | $ | 8.11 | $ | 72,141.90 |
| | 5/18/2004 | 9300 | $ | 8.27 | $ | 76,912.86 |
| 27 | 5/18/2004 | 9884 | $ | 8.22 | $ | 81,246.48 |
| 28 | | | | | |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | |
|---|---|---|---|---|---|
| 1 | 5/18/2004 | 7621 | $ | 8.23 | $ | 62,736.83 |
| | 5/18/2004 | 8037 | $ | 8.14 | $ | 65,401.89 |
| 2 | 5/18/2004 | 8300 | $ | 8.24 | $ | 68,392.00 |
| | 5/18/2004 | 256 | $ | 8.12 | $ | 2,078.72 |
| 3 | 5/18/2004 | 500 | $ | 8.20 | $ | 4,100.00 |
| | 5/18/2004 | 4500 | $ | 8.22 | $ | 37,006.20 |
| 4 | 5/18/2004 | 4760 | $ | 8.13 | $ | 38,705.94 |
| | 5/18/2004 | 4700 | $ | 8.25 | $ | 38,757.14 |
| 5 | 5/18/2004 | 2468 | $ | 8.21 | $ | 20,262.28 |
| | 5/18/2004 | 3040 | $ | 8.23 | $ | 25,019.20 |
| 6 | 5/18/2004 | 4300 | $ | 8.23 | $ | 35,389.00 |
| | 5/18/2004 | 1700 | $ | 8.24 | $ | 14,008.00 |
| 7 | 5/18/2004 | 2100 | $ | 8.13 | $ | 17,073.00 |
| | 5/18/2004 | 2132 | $ | 8.22 | $ | 17,534.42 |
| 8 | 5/18/2004 | 700 | $ | 8.11 | $ | 5,677.00 |
| | 5/18/2004 | 1200 | $ | 8.22 | $ | 9,864.00 |
| 9 | 5/18/2004 | 1600 | $ | 8.14 | $ | 13,024.00 |
| | 5/19/2004 | 7850 | $ | 8.38 | $ | 65,809.69 |
| 10 | 5/19/2004 | 4450 | $ | 8.38 | $ | 37,291.00 |
| | 5/19/2004 | 4700 | $ | 8.33 | $ | 39,151.00 |
| 11 | 5/19/2004 | 5700 | $ | 8.38 | $ | 47,766.00 |
| | 5/19/2004 | 1200 | $ | 8.40 | $ | 10,080.00 |
| 12 | 5/19/2004 | 2200 | $ | 8.39 | $ | 18,458.00 |
| | 5/19/2004 | 2800 | $ | 8.38 | $ | 23,469.04 |
| 13 | 5/19/2004 | 100 | $ | 8.36 | $ | 836.00 |
| | 5/19/2004 | 200 | $ | 8.35 | $ | 1,670.00 |
| 14 | 5/19/2004 | 1100 | $ | 8.34 | $ | 9,174.00 |
| | 5/19/2004 | 7700 | $ | 8.38 | $ | 64,521.38 |
| 15 | 5/19/2004 | 6032 | $ | 8.41 | $ | 50,729.12 |
| | 5/19/2004 | 10599 | $ | 8.34 | $ | 88,364.92 |
| 16 | 5/19/2004 | 8300 | $ | 8.39 | $ | 69,637.00 |
| | 5/19/2004 | 8100 | $ | 8.36 | $ | 67,724.91 |
| 17 | 5/19/2004 | 1200 | $ | 8.33 | $ | 9,996.00 |
| | 5/19/2004 | 15368 | $ | 8.39 | $ | 128,940.59 |
| 18 | 5/19/2004 | 12401 | $ | 8.34 | $ | 103,424.34 |
| | 5/20/2004 | 800 | $ | 8.27 | $ | 6,616.00 |
| 19 | 5/20/2004 | 700 | $ | 8.17 | $ | 5,719.00 |
| | 5/20/2004 | 700 | $ | 8.26 | $ | 5,782.00 |
| 20 | 5/20/2004 | 1500 | $ | 8.12 | $ | 12,180.00 |
| | 5/20/2004 | 1400 | $ | 8.22 | $ | 11,508.00 |
| 21 | 5/20/2004 | 1300 | $ | 8.21 | $ | 10,673.00 |
| | 5/20/2004 | 7823 | $ | 8.18 | $ | 63,999.18 |
| 22 | 5/20/2004 | 1800 | $ | 8.24 | $ | 14,832.00 |
| | 5/20/2004 | 1600 | $ | 8.20 | $ | 13,120.00 |
| 23 | 5/20/2004 | 13500 | $ | 8.12 | $ | 109,633.50 |
| | 5/20/2004 | 12100 | $ | 8.21 | $ | 99,280.50 |
| 24 | 5/20/2004 | 8393 | $ | 8.31 | $ | 69,716.45 |
| | 5/20/2004 | 20985 | $ | 8.13 | $ | 170,608.05 |
| 25 | 5/20/2004 | 13600 | $ | 8.22 | $ | 111,771.60 |
| | 5/20/2004 | 13299 | $ | 8.25 | $ | 109,696.80 |
| 26 | 5/20/2004 | 500 | $ | 8.30 | $ | 4,151.00 |
| | 5/21/2004 | 1360 | $ | 8.20 | $ | 11,152.00 |
| 27 | 5/21/2004 | 900 | $ | 8.24 | $ | 7,416.00 |
| 28 | | | | | |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | | 5/21/2004 | 900 | $ | 8.21 | $ | 7,389.00 |
| | | 5/21/2004 | 1500 | $ | 8.21 | $ | 12,315.00 |
| 2 | | 5/21/2004 | 1420 | $ | 8.31 | $ | 11,800.20 |
| | | 5/21/2004 | 1428 | $ | 8.22 | $ | 11,738.16 |
| 3 | | 5/21/2004 | 1600 | $ | 8.23 | $ | 13,168.00 |
| | | 5/21/2004 | 1500 | $ | 8.33 | $ | 12,487.50 |
| 4 | | 5/21/2004 | 1500 | $ | 8.29 | $ | 12,435.00 |
| | | 5/21/2004 | 3277 | $ | 8.28 | $ | 27,133.56 |
| 5 | | 5/21/2004 | 2500 | $ | 8.30 | $ | 20,750.00 |
| | | 5/21/2004 | 1800 | $ | 8.32 | $ | 14,976.00 |
| 6 | | 5/21/2004 | 5100 | $ | 8.35 | $ | 42,586.02 |
| | | 5/21/2004 | 3930 | $ | 8.26 | $ | 32,461.80 |
| 7 | | 5/21/2004 | 3375 | $ | 8.27 | $ | 27,911.25 |
| | | 5/21/2004 | 7900 | $ | 8.35 | $ | 65,952.36 |
| 8 | | 5/21/2004 | 7900 | $ | 8.29 | $ | 65,479.94 |
| | | 5/21/2004 | 7640 | $ | 8.21 | $ | 62,725.93 |
| 9 | | 5/21/2004 | 8790 | $ | 8.31 | $ | 73,085.33 |
| | | 5/21/2004 | 8710 | $ | 8.22 | $ | 71,623.20 |
| 10 | | 5/21/2004 | 8030 | $ | 8.25 | $ | 66,247.50 |
| | | 5/21/2004 | 9740 | $ | 8.26 | $ | 80,410.52 |
| 11 | | 5/21/2004 | 9200 | $ | 8.27 | $ | 76,095.96 |
| 12 | | | **1200000** | | | **$13,667,047.81** |
| 13 | William M. Klein | 11/24/2003 | 11172 | $ | 12.75 | $ | 142,456.41 |
| | | 11/24/2003 | 1400 | $ | 12.78 | $ | 17,892.00 |
| 14 | | 11/24/2003 | 142 | $ | 12.76 | $ | 1,811.92 |
| | | 11/24/2003 | 6419 | $ | 12.75 | $ | 81,842.25 |
| 15 | | 12/1/2003 | 40234 | $ | 12.75 | $ | 512,983.50 |
| | | 12/1/2003 | 8365 | $ | 12.79 | $ | 106,988.35 |
| 16 | | 12/1/2003 | 100 | $ | 12.81 | $ | 1,280.50 |
| | | 12/1/2003 | 400 | $ | 12.77 | $ | 5,108.00 |
| 17 | | 12/1/2003 | 200 | $ | 12.75 | $ | 2,550.40 |
| | | 12/1/2003 | 1400 | $ | 12.76 | $ | 17,864.00 |
| 18 | | 12/1/2003 | 5000 | $ | 12.78 | $ | 63,900.00 |
| | | 12/1/2003 | 20316 | $ | 12.77 | $ | 259,451.57 |
| 19 | | 12/1/2003 | 200 | $ | 12.79 | $ | 2,557.00 |
| | | 12/1/2003 | 7205 | $ | 12.77 | $ | 91,981.91 |
| 20 | | 12/1/2003 | 10600 | $ | 12.76 | $ | 135,230.56 |
| | | 12/1/2003 | 5980 | $ | 12.79 | $ | 76,465.66 |
| 21 | | 12/2/2003 | 300 | $ | 12.78 | $ | 3,834.00 |
| | | 12/2/2003 | 5467 | $ | 12.75 | $ | 69,704.25 |
| 22 | | 12/2/2003 | 100 | $ | 12.77 | $ | 1,276.50 |
| 23 | | 2/24/2004 | 2216 | $ | 13.54 | $ | 30,004.64 |
| | | 2/24/2004 | 6785 | $ | 13.52 | $ | 91,733.20 |
| 24 | | 2/24/2004 | 4100 | $ | 13.50 | $ | 55,350.00 |
| | | 2/24/2004 | 348 | $ | 13.53 | $ | 4,708.44 |
| 25 | | 2/24/2004 | 300 | $ | 13.52 | $ | 4,056.00 |
| | | 2/24/2004 | 8881 | $ | 13.52 | $ | 120,071.12 |
| 26 | | 2/24/2004 | 77370 | $ | 13.50 | $ | 1,044,495.00 |
| | | 2/25/2004 | 4000 | $ | 13.57 | $ | 54,280.00 |
| 27 | | 2/25/2004 | 8250 | $ | 13.61 | $ | 112,282.50 |
| | | 2/25/2004 | 7600 | $ | 13.48 | $ | 102,448.00 |
| 28 | | 2/25/2004 | 10200 | $ | 13.64 | $ | 139,128.00 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | |
|---|---|---|---|---|---|
| 1 | 2/25/2004 | 4100 | $ 13.55 | $ | 55,555.00 |
| | 2/25/2004 | 4000 | $ 13.63 | $ | 54,520.00 |
| 2 | 2/25/2004 | 5600 | $ 13.63 | $ | 76,328.00 |
| | 2/25/2004 | 1400 | $ 13.62 | $ | 19,068.00 |
| 3 | 2/25/2004 | 1600 | $ 13.60 | $ | 21,760.00 |
| | 2/25/2004 | 1400 | $ 13.58 | $ | 19,012.00 |
| 4 | 2/25/2004 | 1400 | $ 13.63 | $ | 19,082.00 |
| | 2/25/2004 | 1300 | $ 13.66 | $ | 17,758.00 |
| 5 | 2/25/2004 | 1400 | $ 13.67 | $ | 19,138.00 |
| | 2/25/2004 | 1400 | $ 13.56 | $ | 18,984.00 |
| 6 | 2/25/2004 | 800 | $ 13.62 | $ | 10,896.00 |
| | 2/25/2004 | 1300 | $ 13.58 | $ | 17,654.00 |
| 7 | 2/25/2004 | 1300 | $ 13.67 | $ | 17,771.00 |
| | 2/25/2004 | 300 | $ 13.48 | $ | 4,044.00 |
| 8 | 2/25/2004 | 600 | $ 13.66 | $ | 8,196.00 |
| | 2/25/2004 | 1000 | $ 13.65 | $ | 13,650.00 |
| 9 | 2/25/2004 | 3500 | $ 13.65 | $ | 47,775.00 |
| | 2/25/2004 | 150 | $ 13.61 | $ | 2,041.50 |
| 10 | 2/25/2004 | 400 | $ 13.50 | $ | 5,400.00 |
| 11 | 2/25/2004 | 3400 | $ 13.59 | $ | 46,206.00 |
| | 2/25/2004 | 3500 | $ 13.62 | $ | 47,670.00 |
| 12 | 2/25/2004 | 3900 | $ 13.63 | $ | 53,157.00 |
| | 2/25/2004 | 2500 | $ 13.60 | $ | 34,000.00 |
| 13 | 2/25/2004 | 2800 | $ 13.65 | $ | 38,220.00 |
| | 2/25/2004 | 3500 | $ 13.58 | $ | 47,530.00 |
| 14 | 2/25/2004 | 2100 | $ 13.63 | $ | 28,623.00 |
| | 2/25/2004 | 2100 | $ 13.65 | $ | 28,665.00 |
| 15 | 2/25/2004 | 2800 | $ 13.57 | $ | 37,996.00 |
| | 2/25/2004 | 2100 | $ 13.60 | $ | 28,560.00 |
| 16 | 2/25/2004 | 2100 | $ 13.62 | $ | 28,602.00 |
| | 2/25/2004 | 2100 | $ 13.64 | $ | 28,644.00 |
| 17 | 2/25/2004 | 2000 | $ 13.67 | $ | 27,340.00 |
| | 2/25/2004 | 2100 | $ 13.61 | $ | 28,581.00 |
| 18 | 2/26/2004 | 1014 | $ 13.80 | $ | 13,993.20 |
| | 2/26/2004 | 900 | $ 13.54 | $ | 12,186.00 |
| 19 | 2/26/2004 | 200 | $ 13.54 | $ | 2,708.00 |
| | 2/26/2004 | 800 | $ 13.62 | $ | 10,896.00 |
| 20 | 2/26/2004 | 400 | $ 13.63 | $ | 5,452.00 |
| | 2/26/2004 | 3800 | $ 13.79 | $ | 52,402.00 |
| 21 | 2/26/2004 | 400 | $ 13.80 | $ | 5,520.00 |
| | 2/26/2004 | 500 | $ 13.80 | $ | 6,900.00 |
| 22 | 2/26/2004 | 400 | $ 13.76 | $ | 5,504.00 |
| | 2/26/2004 | 700 | $ 13.78 | $ | 9,646.00 |
| 23 | 2/26/2004 | 1200 | $ 13.80 | $ | 16,560.00 |
| | 2/26/2004 | 800 | $ 13.74 | $ | 10,992.00 |
| 24 | 2/26/2004 | 200 | $ 13.75 | $ | 2,750.00 |
| | 2/26/2004 | 100 | $ 13.77 | $ | 1,377.00 |
| 25 | 2/26/2004 | 1200 | $ 13.62 | $ | 16,344.00 |
| | 2/26/2004 | 400 | $ 13.68 | $ | 5,472.00 |
| 26 | 2/26/2004 | 200 | $ 13.75 | $ | 2,750.00 |
| | 2/26/2004 | 1000 | $ 13.60 | $ | 13,600.00 |
| 27 | 2/26/2004 | 3300 | $ 13.60 | $ | 44,880.00 |
| 28 | 2/26/2004 | 100 | $ 13.60 | $ | 1,360.00 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | | 2/26/2004 | 2100 | $ | 13.59 | $ | 28,539.00 |
| | | 2/26/2004 | 500 | $ | 13.60 | $ | 6,800.00 |
| 2 | | 2/26/2004 | 100 | $ | 13.60 | $ | 1,360.00 |
| | | 2/26/2004 | 400 | $ | 13.56 | $ | 5,424.00 |
| 3 | | 2/26/2004 | 200 | $ | 13.59 | $ | 2,718.00 |
| | | 2/26/2004 | 500 | $ | 13.57 | $ | 6,785.00 |
| 4 | | 2/26/2004 | 1400 | $ | 13.54 | $ | 18,956.00 |
| | | 2/26/2004 | 900 | $ | 13.55 | $ | 12,195.00 |
| 5 | | 2/26/2004 | 500 | $ | 13.55 | $ | 6,775.00 |
| | | 2/26/2004 | 300 | $ | 13.61 | $ | 4,083.00 |
| 6 | | 2/26/2004 | 100 | $ | 13.61 | $ | 1,361.00 |
| | | 2/26/2004 | 500 | $ | 13.81 | $ | 6,905.00 |
| 7 | | 2/26/2004 | 900 | $ | 13.82 | $ | 12,438.00 |
| | | 2/26/2004 | 900 | $ | 13.81 | $ | 12,429.00 |
| 8 | | 2/26/2004 | 500 | $ | 13.85 | $ | 6,925.00 |
| | | 2/26/2004 | 3786 | $ | 13.81 | $ | 52,284.66 |
| 9 | | 2/26/2004 | 300 | $ | 13.83 | $ | 4,149.00 |
| | | 2/26/2004 | 300 | $ | 13.82 | $ | 4,146.00 |
| 10 | | 2/26/2004 | 400 | $ | 13.84 | $ | 5,536.00 |
| | | 2/26/2004 | 200 | $ | 13.84 | $ | 2,768.00 |
| 11 | | 2/26/2004 | 300 | $ | 13.82 | $ | 4,146.00 |
| | | 2/26/2004 | 1000 | $ | 13.82 | $ | 13,820.00 |
| 12 | | 2/26/2004 | 1400 | $ | 13.82 | $ | 19,348.00 |
| | | 2/26/2004 | 500 | $ | 13.82 | $ | 6,910.00 |
| 13 | | 2/26/2004 | 7700 | $ | 13.50 | $ | 103,950.00 |
| | | 2/26/2004 | 2000 | $ | 13.50 | $ | 27,000.00 |
| 14 | | 2/26/2004 | 1800 | $ | 13.52 | $ | 24,336.00 |
| | | 2/26/2004 | 400 | $ | 13.53 | $ | 5,412.00 |
| 15 | | 2/26/2004 | 1000 | $ | 13.52 | $ | 13,520.00 |
| | | 2/26/2004 | 900 | $ | 13.51 | $ | 12,159.00 |
| 16 | | 2/26/2004 | 1000 | $ | 13.52 | $ | 13,520.00 |
| | | 2/26/2004 | 1600 | $ | 13.52 | $ | 21,632.00 |
| 17 | | 2/26/2004 | 500 | $ | 13.51 | $ | 6,755.00 |
| | | 2/26/2004 | 2100 | $ | 13.51 | $ | 28,371.00 |
| 18 | | 2/26/2004 | 2925 | $ | 13.51 | $ | 39,516.75 |
| | | 2/26/2004 | 575 | $ | 13.50 | $ | 7,762.50 |
| 19 | | 2/26/2004 | 3200 | $ | 13.51 | $ | 43,232.00 |
| | | 2/26/2004 | 200 | $ | 13.50 | $ | 2,700.00 |
| 20 | | 2/26/2004 | 2100 | $ | 13.53 | $ | 28,413.00 |
| | | 2/26/2004 | 300 | $ | 13.43 | $ | 4,029.00 |
| 21 | | 2/26/2004 | 1000 | $ | 13.41 | $ | 13,410.00 |
| | | 2/26/2004 | 146 | $ | 13.42 | $ | 1,959.32 |
| 22 | | 2/26/2004 | 1254 | $ | 13.41 | $ | 16,816.14 |
| | | 2/26/2004 | 850 | $ | 13.41 | $ | 11,398.50 |
| 23 | | 2/26/2004 | 600 | $ | 13.41 | $ | 8,046.00 |
| | | 2/26/2004 | 300 | $ | 13.41 | $ | 4,023.00 |
| 24 | | 2/26/2004 | 500 | $ | 13.40 | $ | 6,700.00 |
| | | 2/26/2004 | 1600 | $ | 13.41 | $ | 21,456.00 |
| 25 | | 2/26/2004 | 1800 | $ | 13.41 | $ | 24,138.00 |
| | | 2/26/2004 | 600 | $ | 13.36 | $ | 8,016.00 |
| 26 | | 2/26/2004 | 700 | $ | 13.37 | $ | 9,359.00 |
| | | 2/26/2004 | 2250 | $ | 13.40 | $ | 30,150.00 |
| 27 | | 2/26/2004 | 1800 | $ | 13.35 | $ | 24,030.00 |
| 28 | | | | | | |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | |
|---|---|---|---|---|
| 2/26/2004 | 400 | $ | 13.37 | $ | 5,348.00 |
| 2/26/2004 | 300 | $ | 13.48 | $ | 4,044.00 |
| 2/26/2004 | 1200 | $ | 13.49 | $ | 16,188.00 |
| 2/26/2004 | 300 | $ | 13.49 | $ | 4,047.00 |
| 2/26/2004 | 1900 | $ | 13.47 | $ | 25,593.00 |
| 2/26/2004 | 1200 | $ | 13.48 | $ | 16,176.00 |
| 2/26/2004 | 1400 | $ | 13.48 | $ | 18,872.00 |
| 2/26/2004 | 600 | $ | 13.45 | $ | 8,070.00 |
| 2/26/2004 | 1600 | $ | 13.47 | $ | 21,552.00 |
| 2/26/2004 | 300 | $ | 13.47 | $ | 4,041.00 |
| 2/26/2004 | 600 | $ | 13.43 | $ | 8,058.00 |
| 2/26/2004 | 2700 | $ | 13.44 | $ | 36,288.00 |
| 2/26/2004 | 2600 | $ | 13.46 | $ | 34,996.00 |
| 2/26/2004 | 500 | $ | 13.44 | $ | 6,720.00 |
| 2/26/2004 | 3900 | $ | 13.49 | $ | 52,611.00 |
| 2/26/2004 | 3200 | $ | 13.50 | $ | 43,200.00 |
| 2/27/2004 | 600 | $ | 14.25 | $ | 8,550.00 |
| 2/27/2004 | 300 | $ | 14.24 | $ | 4,272.00 |
| 2/27/2004 | 600 | $ | 14.27 | $ | 8,562.00 |
| 2/27/2004 | 500 | $ | 14.20 | $ | 7,100.00 |
| 2/27/2004 | 300 | $ | 14.17 | $ | 4,251.00 |
| 2/27/2004 | 900 | $ | 14.21 | $ | 12,789.00 |
| 2/27/2004 | 600 | $ | 14.15 | $ | 8,490.00 |
| 2/27/2004 | 600 | $ | 14.08 | $ | 8,448.00 |
| 2/27/2004 | 300 | $ | 14.15 | $ | 4,245.00 |
| 2/27/2004 | 600 | $ | 14.07 | $ | 8,442.00 |
| 2/27/2004 | 300 | $ | 14.11 | $ | 4,233.00 |
| 2/27/2004 | 500 | $ | 14.10 | $ | 7,050.00 |
| 2/27/2004 | 864 | $ | 14.06 | $ | 12,147.84 |
| 2/27/2004 | 332 | $ | 14.06 | $ | 4,667.92 |
| 2/27/2004 | 600 | $ | 14.07 | $ | 8,442.00 |
| 2/27/2004 | 500 | $ | 13.98 | $ | 6,990.00 |
| 2/27/2004 | 2000 | $ | 13.96 | $ | 27,920.00 |
| 2/27/2004 | 600 | $ | 14.03 | $ | 8,418.00 |
| 2/27/2004 | 600 | $ | 14.04 | $ | 8,424.00 |
| 2/27/2004 | 300 | $ | 14.03 | $ | 4,209.00 |
| 2/27/2004 | 1400 | $ | 14.01 | $ | 19,614.00 |
| 2/27/2004 | 500 | $ | 14.02 | $ | 7,010.00 |
| 2/27/2004 | 600 | $ | 14.02 | $ | 8,412.00 |
| 2/27/2004 | 300 | $ | 14.00 | $ | 4,200.00 |
| 2/27/2004 | 900 | $ | 14.01 | $ | 12,609.00 |
| 2/27/2004 | 600 | $ | 14.01 | $ | 8,406.00 |
| 2/27/2004 | 1500 | $ | 13.98 | $ | 20,970.00 |
| 2/27/2004 | 800 | $ | 14.00 | $ | 11,200.00 |
| 2/27/2004 | 1600 | $ | 13.99 | $ | 22,384.00 |
| 2/27/2004 | 100 | $ | 14.05 | $ | 1,405.00 |
| 2/27/2004 | 400 | $ | 13.95 | $ | 5,580.00 |
| 2/27/2004 | 118 | $ | 13.94 | $ | 1,644.92 |
| 2/27/2004 | 782 | $ | 13.96 | $ | 10,916.72 |
| 2/27/2004 | 2400 | $ | 13.93 | $ | 33,432.00 |
| 2/27/2004 | 1200 | $ | 13.93 | $ | 16,716.00 |
| 2/27/2004 | 1100 | $ | 13.93 | $ | 15,323.00 |
| 2/27/2004 | 422 | $ | 13.92 | $ | 5,874.24 |

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

| | | | | |
|---|---|---|---|---|
| 2/27/2004 | 1200 | $ | 13.92 | $ 16,704.00 |
| 2/27/2004 | 478 | $ | 13.92 | $ 6,653.76 |
| 2/27/2004 | 2400 | $ | 13.92 | $ 33,408.00 |
| 2/27/2004 | 900 | $ | 13.90 | $ 12,510.00 |
| 2/27/2004 | 1200 | $ | 13.92 | $ 16,704.00 |
| 2/27/2004 | 2500 | $ | 13.88 | $ 34,700.00 |
| 2/27/2004 | 600 | $ | 13.89 | $ 8,334.00 |
| 2/27/2004 | 1500 | $ | 13.89 | $ 20,835.00 |
| 2/27/2004 | 600 | $ | 13.86 | $ 8,316.00 |
| 2/27/2004 | 708 | $ | 13.88 | $ 9,827.04 |
| 2/27/2004 | 900 | $ | 13.88 | $ 12,492.00 |
| 2/27/2004 | 1396 | $ | 13.84 | $ 19,320.64 |
| 2/27/2004 | 600 | $ | 13.86 | $ 8,316.00 |
| 2/27/2004 | 300 | $ | 13.86 | $ 4,158.00 |
| 2/27/2004 | 550 | $ | 13.82 | $ 7,601.00 |
| 2/27/2004 | 450 | $ | 13.83 | $ 6,223.50 |
| 2/27/2004 | 1200 | $ | 13.85 | $ 16,620.00 |
| 2/27/2004 | 1400 | $ | 13.79 | $ 19,306.00 |
| 2/27/2004 | 500 | $ | 13.81 | $ 6,905.00 |
| 2/27/2004 | 700 | $ | 13.82 | $ 9,674.00 |
| 2/27/2004 | 2500 | $ | 13.88 | $ 34,700.00 |
| 2/27/2004 | 2300 | $ | 13.78 | $ 31,694.00 |
| 2/27/2004 | 1000 | $ | 13.81 | $ 13,810.00 |
| | **477500** | | | **$ 6,394,028.83** |
| **Total** | **2177500** | | | **$26,763,076.78** |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

80. Plaintiff brings this action derivatively in the right and for the benefit of BEA to redress injuries suffered, and to be suffered, by BEA as a direct result of the violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. BEA is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

81. Plaintiff will adequately and fairly represent the interests of BEA in enforcing and prosecuting its rights.

82. Plaintiff is and was an owner of the stock of BEA during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

83. The Board of Directors of BEA at the time of the filing of the original complaint consisted of the following eight individuals: defendants Morton, Reyes, Bartz, Chuang, Gross,

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

Coleman, Crandall and Janeway.  As a result of the facts set forth herein, plaintiff has not made any demand on the present Board of Directors of BEA to institute this action because such a demand would be a futile, wasteful and useless act, and the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, particularly for the following reasons:

(a)     As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the improper financial disclosures.  While in possession of this material adverse non-public information regarding the Company, the following current members of the BEA Board participated in the illegal insider selling:

(i)     During the Relevant Period, Chuang sold 1,200,000 shares of BEA stock for proceeds of $13,667,047.81; and

(ii)     During the Relevant Period, Coleman sold 300,000 shares of BEA stock for proceeds of $4,050,000.  Because these defendants received a personal financial benefit from the challenged insider trading transactions and they face a substantial likelihood of liability for their illegal insider selling, these defendants are interested and any demand upon them is futile;

(b)     The principal professional occupation of defendant Chuang is his employment with BEA, pursuant to which he received and continues to receive substantial monetary compensations and other benefits.  Specifically, for FY:04, BEA paid defendant Chuang $827,175, in salary and bonus, and granted him 600,000 options to purchase BEA stock.  Accordingly, defendant Chuang lacks independence from defendants Bartz, Janeway and Reyes, defendants who are not disinterested or independent and who exert influence over defendant Chuang's compensation by virtue of their positions as members of the Compensation Committee.  This lack of independence renders defendant Chuang incapable of impartially considering a demand to commence and vigorously prosecute this action;

(c)     According to BEA's Proxy Statement filed with the SEC on or about May 6, 2004, defendants Gross, Morton and Crandall were, during the Relevant Period, members of the

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1  Audit Committee.  The Audit Committee is responsible for assisting the full Board of Directors in

2  fulfilling its oversight responsibilities relative to the Company's financial reporting practices.

3  Nonetheless, the Audit Committee either caused or allowed the improper financial reports described

4  above.  By such actions, defendants Gross, Morton and Crandall breached their duties.  Any demand

5  upon these defendants is futile;

6        (d)      The entire BEA Board of Directors and senior management participated in

7  the wrongs complained of herein.  BEA's directors are not disinterested or independent due to the

8  following: defendants Morton, Reyes, Bartz, Chuang, Gross, Coleman, Crandall and Janeway served

9  on the BEA Board during the Relevant Period.  Pursuant to their specific duties as Board members,

10  each was charged with the management of the Company and to conduct its business affairs.  Each

11  of the above-referenced defendants breached the fiduciary duties that they owed to BEA and its

12  shareholders in that they failed to prevent and correct the improper financials.  Thus, the BEA Board

13  cannot exercise independent objective judgment in deciding whether to bring this action or whether

14  to vigorously prosecute this action because its members are interested personally in the outcome as

15  it is their actions that have subjected BEA to millions of dollars in liability for possible violations

16  of applicable securities laws;

17        (e)      The Individual Defendants, because of their inter-related business,

18  professional and personal relationships, have developed debilitating conflicts of interest that prevent

19  the Board members of the Company from taking the necessary and proper action on behalf of the

20  Company as requested herein.  In addition to the conflicts that exist as a result of their participation

21  in the improper financial reporting and insider selling, as detailed herein *supra*, the majority of the

22  Board, including the defendants listed below, are subject to the following prejudicial entanglements:

23        (i)      Defendants Chuang, Coleman, Reyes and Bartz Are Long-Time

24  Business Associates:

25      From 1986 to 1994, defendant Chuang held various positions as Sun Microsystems,
       Inc. ("Sun"), including the Chief Technology Officer and Corporate Director of
26      Strategic Systems Development.  From 1985 to 1995, defendant William Coleman
       held various positions at Sun, including the Vice President and General Manager.
27      From 1994 to 2001, defendant Reyes held various positions as Sun, including Vice
       President and Treasurer.  From 1983 to 1992, defendant Bartz was Vice President of
28      Worldwide Field Operations of Sun.  Because of their long-standing and entangling

1   business and professional relationships, defendants Chuang, Coleman, Reyes and
2   Bartz will not take the action requested by plaintiff herein against one another or the
    remainder of the Individual Defendants;

3                   (ii)        Defendant Morton and Insider Selling Defendant Ashburn Are
4   Long-Time Business Associates:

5   From 1960 to 1992, defendant Morton held various positions at Hewlett-Packard
    Corporation ("Hewlett-Packard"), including Executive Vice President, Chief
6   Operating Officer and director. From 1967 to 2001, Insider Selling Defendant
    Ashburn held various positions at Hewlett-Packard, including Vice President and
7   General Manager.  Because of their long-standing and entangling business and
    professional relationships, defendant Morton will not take the action requested by
8   plaintiff herein against defendant Ashburn or the remainder of the Individual
    Defendants;
9
10                  (iii)       Defendants Coleman and Janeway Have Inter-related Business
    Relationships:
11
12  Defendant Coleman is the Founder, Chairman, and CEO of Cassatt Corporation
    ("Cassatt"). Defendant Janeway is the Vice Chairman of Warburg Pincus, a global
    private equity firm.  Warburg Picus is currently funding Cassatt's entry into the
13  autonomic computing market.   Accordingly, neither defendant Coleman nor
    defendant Janeway will take the action requested by plaintiff herein against one
14  another or the remainder of the Individual Defendants because they have an interest
    in safeguarding ongoing business arrangements between Cassatt and Warburg
15  Pincus; and

16                  (iv)        BEA in FY:04 almost doubled its revenues to companies where

17  Director Defendants also serve as executive officers and/or are board members.  For instance in

18  FY:04 total revenues recognized by BEA from such customer sales were $11.2 million, as opposed

19  to FY:03 and FY:02 revenues of $5.6 million and $4.7 million, respectively.  Accordingly, certain

20  Director Defendants cannot exercise independent objective judgment in deciding whether to bring

21  this action or whether to vigorously prosecute this action because they  have an interest in

22  safeguarding the long standing business relationship between the companies;

23                  (f)        The defendant directors of BEA, as more fully detailed herein, participated

24  in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts

25  to conceal or disguise those wrongs from BEA's stockholders or recklessly and/or negligently

26  disregarded the wrongs complained of herein, and are therefore not disinterested parties;

27                  (g)        In order to bring this suit, all of the directors of BEA would be forced to sue

28  themselves and persons with whom they have extensive business and personal entanglements, which

1   they will not do, thereby excusing demand;

2            (h)     The acts complained of constitute violations of the fiduciary duties owed by

3   BEA's officers and directors and these acts are incapable of ratification;

4            (i)      Each of the defendant directors of BEA authorized and/or permitted the

5   improper statements disseminated directly to the public or made directly to securities analysts and

6   which were made available and distributed to shareholders, authorized and/or permitted the issuance

7   of various of the improper statements and are principal beneficiaries of the wrongdoing alleged

8   herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by

9   them;

10            (j)      Any suit by the current directors of BEA to remedy these wrongs would likely

11   expose the Individual Defendants and BEA to further violations of the securities laws that would

12   result in civil actions being filed against one or more of the Individual Defendants, thus, they are

13   hopelessly conflicted in making any supposedly independent determination whether to sue

14   themselves;

15            (k)     BEA has been and will continue to be exposed to significant losses due to the

16   wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed

17   any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt

18   to recover for BEA any part of the damages BEA suffered and will suffer thereby;

19            (l)      If the current directors were to bring this derivative action against themselves,

20   they would thereby expose their own misconduct, which underlies allegations against them

21   contained in class action complaints for violations of securities law, which admissions would impair

22   their defense of the class actions and greatly increase the probability of their personal liability in the

23   class actions, in an amount likely to be in excess of any insurance coverage available to the

24   Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses

25   they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile;

26   and

27            (m)    If BEA's current and past officers and directors are protected against personal

28   liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in

1  this Complaint by directors' and officers' liability insurance, they caused the Company to purchase

2  that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders

3  of BEA.   However, due to certain changes in the language of directors' and officers' liability

4  insurance policies in the past few years, the directors' and officers' liability insurance policies

5  covering the defendants in this case contain provisions that eliminate coverage for any action

6  brought directly by BEA against these defendants, known as, *inter alia*, the "insured versus insured

7  exclusion."  As a result, if these directors were to sue themselves or certain of the officers of BEA,

8  there would be no directors' and officers' insurance protection and thus, this is a further reason why

9  they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action

10 is brought, such insurance coverage exists and will provide a basis for the Company to effectuate

11 recovery.  If there is no directors' and officers' liability insurance at all then the current directors will

12 not cause BEA to sue them, since they will face a large uninsured liability.

13       84.     Moreover, despite the Individual Defendants having knowledge of the claims and

14 causes of action raised by plaintiff, the current Board of Directors has failed and refused to seek to

15 recover for BEA for any of the wrongdoing alleged by plaintiff herein.

16       85.     Plaintiff has not made any demand on shareholders of BEA to institute this action

17 since such demand would be a futile and useless act for the following reasons:

18       a.     BEA is a publicly held company with over 404 million shares outstanding,

19 and thousands of shareholders;

20       b.     Making demand on such a number of shareholders would be impossible for

21 plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

22       c.     Making demand on all shareholders would force plaintiff to incur huge

23 expenses, assuming all shareholders could be individually identified.

24 **COUNT I**

25 **Against the Insider Selling Defendants for Violation of
California Corporations Code §25402**

26

27       86.     Plaintiff incorporates by reference and realleges each and every allegation set forth

28 above, as though fully set forth herein.

87.     At the time that the Insider Selling Defendants sold their BEA common stock as set forth herein, by reason of their high executive and/or directorship positions with BEA, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of BEA's licensing division sales execution problems, sales disruption caused by reorganization of sales staff and management, weak sales of the WebLogic 8.1 Platform and North American reserves disruption and telecom vertical business weakness.

88.     At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of BEA shares at that time.

89.     The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their BEA common stock in California in violation of California Corporations Code §25402.

90.     Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to BEA for damages in an amount up to three times the difference between the price at which BEA common stock was sold by the defendants, and each of them, and the market value which that BEA common stock would have had at the time of the sale if the information known to the defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

**COUNT II**

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

91.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.     At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold BEA common stock on the basis of such information.

93.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset

1   belonging to the Company, which the Insider Selling Defendants used for their own benefit when

2   they sold BEA common stock.

3       94.    At the time of their stock sales, the Insider Selling Defendants knew that the

4   Company's revenues were materially overstated.  The Insider Selling Defendants' sales of BEA

5   common stock while in possession and control of this material adverse non-public information was

6   a breach of their fiduciary duties of loyalty and good faith.

7       95.    Since the use of the Company's proprietary information for their own gain constitutes

8   a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the

9   imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

10                          **COUNT III**

11          **Against All Defendants for Breach of Fiduciary Duty**

12      96.    Plaintiff incorporates by reference and realleges each and every allegation contained

13   above, as though fully set forth herein.

14      97.    The Individual Defendants owed and owe BEA fiduciary obligations.  By reason of

15   their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe BEA

16   the highest obligation of good faith, fair dealing, loyalty and due care.

17      98.    The Individual Defendants, and each of them, violated and breached their fiduciary

18   duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

19      99.    Each of the Individual Defendants had actual or constructive knowledge that they had

20   caused the Company to improperly misrepresent the financial results of the Company and failed to

21   correct the Company's publicly reported financial results and guidance.  These actions could not

22   have been a good faith exercise of prudent business judgment to protect and promote the Company's

23   corporate interests.

24      100.   As a direct and proximate result of the Individual Defendants' failure to perform their

25   fiduciary obligations, BEA has sustained significant damages.  As a result of the misconduct alleged

26   herein, the Individual Defendants are liable to the Company.

27      101.   Plaintiff on behalf of BEA has no adequate remedy at law.

28

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

1

**COUNT IV**

2

**Against All Defendants for Abuse of Control**

3      102.    Plaintiff incorporates by reference and realleges each and every allegation contained

4    above, as though fully set forth herein.

5      103.    The Individual Defendants' misconduct alleged herein constituted an abuse of their

6    ability to control and influence BEA, for which they are legally responsible.

7      104.    As a direct and proximate result of the Individual Defendants' abuse of control, BEA

8    has sustained significant damages.

9      105.    As a result of the misconduct alleged herein, the Individual Defendants are liable to

10   the Company.

11     106.    Plaintiff on behalf of BEA has no adequate remedy at law.

12

**COUNT V**

13

**Against All Defendants for Gross Mismanagement**

14     107.    Plaintiff incorporates by reference and realleges each and every allegation contained

15   above, as though fully set forth herein.

16     108.    By their actions alleged herein, the Individual Defendants, either directly or through

17   aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard

18   to prudently managing the assets and business of BEA in a manner consistent with the operations

19   of a publicly held corporation.

20     109.    As a direct and proximate result of the Individual Defendants' gross mismanagement

21   and breaches of duty alleged herein, BEA has sustained significant damages in excess of hundreds

22   of millions of dollars.

23     110.    As a result of the misconduct and breaches of duty alleged herein, the Individual

24   Defendants are liable to the Company.

25     111.    Plaintiff on behalf of BEA has no adequate remedy at law.

26

**COUNT VI**

27

**Against All Defendants for Waste of Corporate Assets**

28     112.    Plaintiff incorporates by reference and realleges each and every allegation contained

1   above, as though fully set forth herein.

2       113.   As a result of the improper financial disclosures, and by failing to properly consider

3   the interests of the Company and its public shareholders by failing to conduct proper supervision,

4   defendants have caused BEA to waste valuable corporate assets by paying incentive based bonuses

5   to certain of its executive officers and incur potentially billions of dollars of legal liability and/or

6   legal costs to defend defendants' unlawful actions.

7       114.   As a result of the waste of corporate assets, the Individual Defendants are liable to

8   the Company.

9       115.   Plaintiff on behalf of BEA has no adequate remedy at law.

10   **COUNT VII**

11   **Against All Defendants for Unjust Enrichment**

12       116.   Plaintiff incorporates by reference and realleges each and every allegation set forth

13   above, as though fully set forth herein.

14       117.   By their wrongful acts and omissions, defendants were unjustly enriched at the

15   expense of and to the detriment of BEA.

16       118.   Plaintiff, as a shareholder and representative of BEA, seeks restitution from these

17   defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and

18   other compensation obtained by these defendants, and each of them, from their wrongful conduct

19   and fiduciary breaches.

20   **PRAYER FOR RELIEF**

21       WHEREFORE, plaintiff demands judgment as follows:

22       A.   Against all of the Individual Defendants and in favor of the Company for the amount

23   of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary

24   duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

25       B.   Determining and awarding BEA treble damages pursuant to California Corporations

26   Code §25502.5(a) for the Insider Selling Defendants' violations of California Corporations Code

27   §25402;

28       C.   Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of BEA has an effective remedy;

D.      Awarding to BEA restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 15, 2004

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
MARC M. UMEDA
KELLY M. MCINTYRE

s/ Marc M. Umeda
_____
MARC M. UMEDA

1010 Second Ave., Suite 2360
San Diego, CA  92101
Telephone:  619/525-3990
Facsimile: 619/525-3991

GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: 310/201-9150
Facsimile: 310/210-9160
-and-
SUSAN KUPFER
455 Market Street, Suite 1810
San Francisco, California 94105
Telephone: 415/972-8160
Facsimile: 415/972-8166

Co-Lead Counsel for Plaintiff

FARUQI & FARUQI, LLP
NADEEM FARUQI
320 East 39th Street
New York, NY 10016
Telephone: 212/983-9330

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

Facsimile: 212/983-9331

MURRAY FRANK & SAILER LLP
ERIC BELFI
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone: 212/682-1818
Facsimile: 212/682-1892

BRANSTETTER, KILGORE, STRANCH
  & JENNINGS
JAMES G. STRANCH, III
GERARD STRANCH
C. DEWEY BRANSTETTER, JR.
227 Second Avenue North, 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
Facsimile:  615/255-5419

SAVERI & SAVERI, INC
R. ALEXANDER SAVERI
GEOFREY C. RUSHING
CADIO ZIRPOLI
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: 415/217-6810
Facsimile: 415/217-6813

Attorneys for Plaintiff

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 1010 Second Avenue, Suite 2360, San Diego, California 92101.

2.      That on November 15, 2004, declarant served the following document by depositing a true and correct copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List:

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT AND VIOLATIONS OF CALIFORNIA CORPORATIONS CODE

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this November 15, 2004, at San Diego, California.

s/ Kristin Zimmer

KRISTIN ZIMMER

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI

*In re BEA Systems Derivative Litigation*

COUNSEL FOR PLAINTIFF(S)

Brian J. Robbins
Marc M. Umeda
ROBBINS UMEDA & FINK, LLP
1010 Second Ave., Suite 2360
San Diego, CA  92101
Telephone:  619/525-3990
Facsimile: 619/525-3991

James G. Stranch, III
Gerard Stranch
C. Dewey Branstetter, Jr.
BRANSTETTER, KILGORE, STRANCH
 & JENNINGS
227 Second Avenue North, 4th Floor
Nashville, TN 37201-1631
Telephone: 615/254-8801
Facsimile:  615/255-5419

Nadeem Faruqi
FARUQI & FARUQI, LLP
320 East 39th Street
New York, NY 10016
Telephone: 212/983-9330
Facsimile: 212/983-9331

R. Alexander Saveri
Geofrey C. Rushing
Cadio Zirpoli
SAVERI & SAVERI, INC
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: 415/217-6810
Facsimile: 415/217-6813

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG, LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone: 310/201-9150
Facsimile: 310/201-9160

Susan Kupfer
GLANCY BINKOW & GOLDBERG, LLP
455 Market Street, Suite 1810
San Francisco, California 94105
Telephone: 415/972-8160
Facsimile: 415/972-8166

COUNSEL FOR DEFENDANTS

Boris Feldman
Ignacio E. Salceda
Caz Hashemi
Claudia N. Main
WILSON SONSINI GOODRICH &
 ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304
Telephone: 650/493-9300
Facsimile: 650/565-5100

G:\BEA Systems\Complaints\Amended Complaint\Amended Verified Shareholder Derivative Complaint.wpd

VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT - C 04 2340 SI